HILL ET AL. v. BLUMENBERG.

*Probate court—Jurisdiction to issue letters of administration derived from Constitution—Legal "residence" and "domicile" distinguished—Decedent with legal domicile in Ohio but residence outside state.*

1. The jurisdiction of the Probate Court to issue letters of administration on the estates of persons who were domiciled in Ohio proceeds from Section 8, Article IV, of the Constitution, and not from Section 10604, General Code.

2. A person can have more than one legal residence at a given time, but can have only one legal domicile.

3. The Probate Court of the county in Ohio where a decedent had a legal domicile has jurisdiction to appoint an administrator of his estate notwithstanding such decedent may have had, for some purposes, a residence without Ohio.

(Decided April 4, 1924.)

ERROR: Court of Appeals for Athens county.

*Messrs. Jones & Jones,* for plaintiffs in error.
*Messrs. Wood & Williams; Messrs. Foster & Wells,* and *Messrs. Carusi & Cassin,* for defendant in error.

MAUCK, J. Mendum R. Blumenberg died intestate at Washington, D. C., June 21, 1922. On July 13, following, Minnie P. Blumenberg, his widow, was appointed administratrix of his estate by the Probate Court of Athens county, Ohio. On September 15, 1922, a motion was filed in that court by

[1] Courts, 15 C. J. § 419; [2] Domicile, 19 C. J. § 2; [3] Executors and Administrators, 23 C. J. § 34.

Moxley Hill and Martha Blumenberg McNair, brother and sister of the decedent, to vacate the appointment of the administratrix on the ground that the decedent was not an ''inhabitant, or a resident of said county of Athens or of the state of Ohio,'' but ''was an inhabitant and a resident of the District of Columbia and had his domicile therein.''

The motion proceeded to judgment in the Probate Court and was taken thence by appeal to the Court of Common Pleas. That court denied the prayer of the motion to vacate, and error is now prosecuted to this court from that judgment.

In this court it is argued that there were some erroneous rulings in the trial court in the admission of evidence, but we find nothing sufficiently serious to warrant extended consideration. The only question of moment is whether the judgment of the Common Pleas is clearly opposed to the weight of the evidence or contrary to law.

There are certain facts, either established by documentary proof or by equally unequivocal conduct, that tend in some degree to support the views of both of the contending parties. The plaintiffs in error show that in 1896 Mr. Blumenberg in writing petitioned a lodge in Washington, asserting himself to be a resident of that city; that for a number of years he filed his income tax returns as a resident of Washington; that for several years last past he made a personal property return for taxation in the District of Columbia; that in 1918 he registered under the selective draft law as a resident of the District; that in 1902 he was married by virtue of a license that gave his residence

as Washington; that in obtaining appointment as administrator of his mother's estate he represented his residence to be in Washington; and that he held resident membership in a club of that city. On the other hand, it is shown that in applying for life insurance he indicated his home to be. in Athens. His official commission as an official of the National House of Representatives described him as a resident of Ohio. He once in writing asserted to Judge Worstell his Ohio residence with a view to obtaining an Ohio automobile license. But most significant was his voting in Ohio continuously from 1896 to 1920. He was born in Washington, owned property there, died there, and was buried there. He owned no property in Ohio. Many of his most intimate friends, both in Athens and Washington, testify to his declarations that he considered Athens his home, and some of them testify that he expressed the hope to eventually permanently abide there. With his wife he lived in a Washington apartment house. His household goods were part in the apartment and part in storage. Substantially none of such goods were ever in Athens.

Section 10604, General Code, provides that on the death of an inhabitant of this state letters of administration shall be granted by the Probate Court of the county of which the decedent was an inhabitant or resident. The term "inhabitance" is a narrow one and means an actual abiding place at the point in question, as distinguished from domicile, by which is meant one's legal relationship to the indicated place. Century Dictionary. If an exclusive interpretation were to be given the sec-

tion referred to there would seem to be some warrant for the claim that the Probate Court is limited in the issue of letters of administration to the estates of those actually abiding in the state. The jurisdiction of the Probate Court, however, is largely derived from the Constitution. The Supreme Court in *Union Savings Bank & Trust Co.* v. *W. U. Telegraph Co.*, 79 Ohio St., 89, said at page 99:

"The Probate Court is a court of record and its jurisdiction in matters testamentary and in the appointment of administrators and guardians has been broadly given by the Constitution of this state. Article IV, Sections 7 and 8. The jurisdiction is plenary and it may well be doubted whether the legislature, if it chose to do so, could in any respect limit it."

Section 8, Article IV, of the Constitution, provides:

"The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, * * * and such other jurisdiction, in any county or counties, as may be provided by law."

It seems clear that the Probate Court, like other courts, must be open to all citizens whether habitants of the state or not. There is no machinery for the distribution of personal property except through the medium of an administrator, and as a decedent's personal estate is necessarily governed by the law of his legal domicile the courts of such domicile cannot be denied those seeking their offices in the distribution of such estate. The statute quoted, so far as it refers to inhabitant, is an extension, not a limitation, of the jurisdiction of the

court. It finds its authority in the last sentence of Section 8, Article IV, authorizing such other jurisdiction as may be provided by law. It follows, therefore, that the Probate Court has constitutional jurisdiction to issue letters of administration upon the estates of all those having a legal domicile in the state, and statutory jurisdiction, under Section 10604, General Code, to issue such letters on the estates of inhabitants not domiciled in Ohio, and additional statutory jurisdiction under Section 10625, General Code, over those having no residence of any kind in Ohio, but possessed of property therein. The first mentioned jurisdiction is exercised in the county of which the decedent was a resident; the second in the county which he inhabited at his death; and the last in any county in which the decedent had property.

That Blumenberg was a resident of the District of Columbia for some purposes is true. To illustrate, he was a non-resident of Ohio and a resident of the District so far as the Ohio law of attachment is concerned. *Thomson* v. *Ogden,* 3 C. C. (N. S.), 51. He was doubtless such resident of the District that he was obliged to return for taxation at that place such tangible personal property as was in the District at the time the return was required. Residence in these restricted senses is not inconsistent with another more or less technical residence incident to legal domicile.

"A person may have more than one residence at the same time, but can have only one domicile, at least for purposes of succession." *In re Jones Estate,* 192 Iowa, 78, 182 N. W., 227, 16 A. L. R., 1286, 1289.

App.]                    Hill  v.  Blumenberg.

Of all the authorities examined none is more satisfactory than an opinion of the Supreme Court of Oregon in *Pickering* v. *Winch,* 48 Ore., 500, 87 Pac., 763, 9 L. R. A. (N. S.), 1159, 1164. It points out the difficulty of an all-comprehending definition of domicile and says:

" 'Domicile,' strictly speaking, is the relation the law created between an individual and a particular place or country, and each case is dependent upon its own particular facts. It is not in a legal sense synonymous with 'residence.' A person may have more than one residence and more than one home, in the ordinary acceptance of those terms, but he can have only one domicile, and the law requires that for the purpose of the succession of his property he be domiciled somewhere. The word 'home' is undoubtedly the fundamental idea of domicile, though calling a place 'home' as a matter of fact may not be and often is not entitled to much weight. Jacobs, Domicile, Section 72. To constitute domicile there must be both the fact of a fixed habitation or abode in a particular place and an intention to remain there permanently or indefinitely; or, as Mr. Wharton says: 'There must be: (1) Residence, actual or inchoate; (2) the non-existence of any intention to make a domicile elsewhere.' Wharton, Conflict of Laws, Sec. 21. Domicile, therefore, is made up of residence and intention. Neither, standing alone, is sufficient for the purpose. Residence is not enough, except as it is co-joined with intent, which determines whether its character is permanent or temporary; and clearly a mere intent cannot create a domicile."

Let us consider the undoubted facts. Mr. Blu-

menberg came to Athens as General Grosvenor's secretary in 1895 or 1896, and voted there in 1896. It is argued that his vote was unlawfully cast, but that charge does not appear warranted. He was a young unmarried man, born and brought to manhood in Washington city. His duties required him to be in Athens when Congress was not in session. It seemed likely that his political interests would be served by changing his domicile to Athens. He was actually in Athens and desired to there fix his domicile. Why was he not at liberty to do so? He was violating neither law nor morals by increasing his usefulness to his employer, and he was enlarging his own satisfaction in thus becoming a citizen of this state. It is presumed that he had been in Athens with such intention more than a year prior to the election of 1896, but, even though it were established that he had not resided in Athens long enough to vote in 1896, nevertheless his intention to make that place his domicile was evidenced by his vote, and the continuing purpose to be and remain a legal resident of that place was manifested by his continuing to vote there up to and including the general election next prior to his death. The intention so manifested was further revealed to a score and more of witnesses, who testify to his frequent declarations, covering many years, that Athens was his home town and that he expected some time to return there and continuously abide there. It is unlikely that a stronger case of intention to fix a domicile was ever proven. That intent, co-joined with his presence and actual abode in 1895 or 1896, fixed his domicile in this state, and, while fragmentary acts and declarations

since afford some evidence to the contrary, the proof of his Ohio residence was strong and convincing. Demonstrated, as it seems to be, that about 1896 he actually abided in this state and intended this to be his domicile, he necessarily continued to be domiciled here unless subsequently he both removed to Washington and had an intention to change his domicile to that city. The evidence is that upon his marriage in 1902 he acquired household goods, and with his wife had an abode in that city, where his duties kept him. There is, however, not only no evidence that he purposed to change his legal domicile to the District of Columbia, but, except the casual incidents referred to above, is much evidence that he intended to maintain his domicile in Ohio.

The judgment of the Common Pleas is in harmony with the evidence and the law.

*Judgment affirmed.*

MIDDLETON, P. J., and SAYRE, J., concur.