CUNNINGHAM ET AL. *v.* BESSEMER TRUST CO., EXR.

(Decided March 24, 1931.)

Mr. *Bradley McK. Burns,* and *Messrs. Thomas, Hyers & Leyland,* for plaintiffs in error.

*Messrs. McClure & McClure* and *Messrs. Sigler & Denlinger,* for defendant in error.

ALLREAD, P. J.  A motion has been filed by the defendant in error, the Bessemer Trust Company, as executor of the estate of Charles W. Palmer, deceased, to dismiss the petition in error upon the ground that none of the plaintiffs in error has any legal interest in the subject-matter of this action. There has been filed in support of the motion certain affidavits and records in support of that contention.  The case originated in the probate court of Montgomery county and was appealed by defendant in error to the court of common pleas.  The action was then tried in the court of common pleas, resulting in a judgment in favor of the defendant in error to the effect that the decedent was a resident of the state of Pennsylvania at the time of his death. It is said in the briefs that the plaintiffs in error together with one other party were parties in the probate court when the finding was made that the deceased was a resident of Montgomery county, Ohio.  The same parties were also parties on appeal in the common pleas court.  It was discovered in the trial of the case in the court of common pleas that one of the parties was a beneficiary under the will of Palmer, so that when it came to the motion for new trial the only parties moving for a new trial were the plaintiffs in error.  The record shows that after the judgment of the court of common pleas,

and after the order overruling the motion for new trial on the same date, there appears the following entry:

"Entry fixing bond at $1000.00 M. 112 P. 1.

"This day this cause came on to be heard on the oral application of counsel for Dwight B. Cunningham, et al., for an order of this Court fixing the amount of the undertaking to stay execution in this case, and it appearing to the court that this case falls within the provisions of Paragraph 4, Section 12265 of the General Code of Ohio and that it is the duty of this Court to fix the amount of the bond staying execution pending error proceedings in this case.

"It is, therefore, ordered that said undertaking in error staying execution of the final order of this court be fixed at the sum of $1000.00.

"Approved. Snediker, Judge.

"McClure & McClure; Sigler & Denlinger,

"Attorneys for Bessemer Trust Co., as Executors.

"Bradley McK. Burns & H. T. Leyland,

"Attorneys for Dwight B. Cunningham, et al.

"November 24, 1930. Bond filed."

We are of opinion that under the record of this case including the action of the court of common pleas as to the bond, and the approval of said entry by the various counsel, there would be a waiver by the defendant in error as to the plaintiffs' right to institute the proceedings in the Court of Appeals. The authority for this is found in the following cases: *Ohio Life Ins. & Trust Co.* v. *Goodin,* 10 Ohio St., 557; *Cairnes* v. *Knight, Exr.,* 17 Ohio St., 68; *Bank* v. *Green,* 40 Ohio St., 431; *Bulkley* v. *Stephens,* 29 Ohio St., 620; *Wangerien* v. *Aspell,* 47 Ohio St. 250, 24 N. E., 405.

It is not clear to our minds that the question of the interest of these plaintiffs in error may not be again considered on the hearing of the petition in error.

In the case of *Ohio Life Ins. & Trust Co.* v. *Goodin, supra,* it is held: ''In order to justify the reversal of a judgment or decree upon error, the record must show affirmatively, not only that error intervened, but that it was to the prejudice of the party seeking to take advantage of it.''

The same proposition is decided in some of the cases cited. We are clear that so far as the motion is concerned it must be overruled.

On Motion to dismiss.

(Decided April 18, 1931.)

A motion has been filed in this court by counsel for plaintiff in error, Dwight B. Cunningham, to require this court to summarily reverse the judgment of the court of common pleas, to dismiss the appeal from the probate court for want of jurisdiction. The original proceedings began in the probate court, appointment of an executrix has been made in that court, and an inventory has been rendered. These proceedings began by the filing of exceptions to the inventory. The exceptions were authorized by Section 5346 and by Section 10639, General Code.

The exceptions raised two issues; one as to the inventory being made a basis for the inheritance tax, and the other as to the testator being a resident of Montgomery county, Ohio, or as to his being a resident of the county of Allegheny in the state of Pennsylvania. The case was heard upon the exceptions. The probate court first decided the question in which most of the parties before the probate court were interested, to wit, the residence of the testator,

and held that said testator was a resident of Montgomery county, Ohio.

The probate court then proceeded to a finding on the question of the inheritance tax, holding against the exceptions, and that the inventory was proper as against the taxing officials. The case was then docketed in the court of common pleas on appeal, and later came on for hearing. The court of common pleas decided upon the one issue, to wit, as to the residence of the testator, in favor of the Bessemer Trust Company, finding that the testator was at the date of his death a legal resident of the county of Allegheny in the state of Pennsylvania.

No other question was decided by the court of common pleas. It may be remarked that if the question as to validity of the inheritance tax was involved in the appeal to the court of common pleas then that branch of the case would still remain in said court.

From the judgment of the court of common pleas as to the legal residence of the testator, Cunningham and others prosecuted error to this court.

The question therefore is: Should this court, upon the motion of counsel for plaintiffs in error, grant this motion to dismiss this error case, dismiss the appeal in the court of common pleas, and dismiss the proceedings in the probate court?

We have examined all the cases cited in the briefs and we do not think any of them are authorities for the present case. It must be observed that there were two subjects presented in the probate court. The first was as to the inheritance tax and the second was the question of the residence of the testator. The first question was between the estate and the

taxing authorities. The second question was between the heirs of the estate, or rather the plaintiffs in error, and the executor of the estate. The second question was the one considered and decided by the court of common pleas and is the question for decision here. This question arose under proceedings instituted under Sections 10639 and 10640, General Code, and was one over which both the probate court and the court of common pleas had jurisdiction.

The court of common pleas has decided the one question over which it had jurisdiction, and as to which the tax commission had no concern or interest. Its decision was within its jurisdiction and the judgment of the lower courts cannot be held as erroneous because no notice was given to the state tax commission or county auditor.

The motion now before the court must be' overruled.

On the Merits.

(Decided May 11, 1931.)

This cause originated in the probate court of Montgomery county, Ohio. Charles W. Palmer died at the Soldiers' Home in Dayton, Ohio, on July 12, 1928. His body was buried near Pitcairn, Allegheny county, Pennsylvania, where his wife and children had been buried. His will was dated April 23, 1908, and was on deposit with the Bessemer Trust Company at Pittsburgh, Pennsylvania. This company was also the executor of the will.

The will was duly probated in the orphans' court of Allegheny county, Pennsylvania, and the Bessemer Trust Company was appointed by the court as executor.

Ancillary administration was instituted in Montgomery county, Ohio. An inventory was returned and filed in the probate court of said county. The property disclosed in the inventory constituted an estate of $305,000. The executor filed special exceptions to the inventory. Exceptions were filed pursuant to Section 10639, General Code, and raised the question of legal domicile of Charles W. Palmer at the time of his death.

Exceptions came on for hearing in the probate court on the evidence, and that court found that Palmer at the date of his death was domiciled in Montgomery county, Ohio.

The executor appealed under authority of Section 10640, General Code.

The case was tried in the court of common pleas upon the evidence heard in the probate court and additional evidence. The court of common pleas found that Charles W. Palmer was domiciled at Allegheny county, Pennsylvania, and returned judgment accordingly.

A proceeding in error has been filed in the Court of Appeals, and a motion has been filed to strike the petition in error from the files, and to dismiss the petition in error, for the reason that the plaintiffs in error have no such interest in the proceedings as would justify their prosecuting an error case. The motion was overruled. A motion was thereupon filed by the plaintiffs in error to summarily reverse the judgment of the common pleas court, to dismiss the appeal from the probate court to the common pleas court, and to dismiss the proceedings in the probate court for the reasons therein stated. This motion was also overruled. The court gave its rea-

sons upon the ruling upon each of said motions and is still satisfied therewith.

It may be remarked that when an appeal has been taken from a judgment of the probate court to the court of common pleas, if retried in the court of common pleas upon the evidence submitted, and a new judgment is rendered uninfluenced by the judgment appealed from, the judgment of the court of common pleas becomes the effective judgment on the question involved in the appeal.

When the judgment of the court of common pleas is taken on error to the Court of Appeals, the judgment of the court of common pleas must stand unless in the appellate court it is shown: (1) That the court of common pleas was mistaken in its notion of the law, or (2) that there was a misconception by the court of common pleas of the evidence and the weight thereof. This court will consider errors at law, but upon conflicting evidence it must allow a reasonable scope to the judgment of the court of common pleas.

With this rule in view we proceed to consider the judgment below and the evidence upon which it is founded.

Charles W. Palmer was originally a resident of the state of Pennsylvania, and domiciled at Pitcairn, Allegheny county. He first came to the Dayton Soldiers' Home in October, 1908, remaining there during the winters, and was discharged in March, 1912.

On December 8, 1913, he was again received and remained in said home until the date of his death. He was subject to the rules of the institution and was released on furlough. These furloughs were

usually given in the spring and summer, and covered nearly half of the year. Palmer went to the Dayton Soldiers' Home in the lifetime of his wife and stayed there during the winter. His wife died either in the late part of 1915 or in the early part of 1916. She was buried at the cemetery near Pitcairn. Palmer then disposed of his real estate; sold his former home to his niece and her husband, Mrs. and Mr. Rhoades. He also sold the most of his furniture and belongings of his former home. He reserved the use of one room in his former home and certain of his furniture and this room he used largely when he returned to Pitcairn. It appears that after selling his home and furniture he came to Dayton in the fall of 1916. It is claimed by counsel for plaintiff in error this constituted a crisis in his life and called for a new arrangement for the future. It is agreed upon both sides that up to this point Palmer's domicile was at Pitcairn, Allegheny county, Pennsylvania.

There may be some reason in holding that Palmer at this time was undecided as to his future residence. This is shown by the letter to his sister dated August 24, 1916. We do not have Palmer's version of his life from 1916 on, but there is evidence showing that at that time he was undecided, and it does not appear that he really decided the question until the fall of 1924. At this time there is evidence to show that he must have voted in Jefferson township, Montgomery county, Ohio, at the general election occurring in the fall of 1924. This may have been the result of his negotiations with Dr. Rike and the correspondence with James and Coolidge as to his domicile.

544

A question is raised as to the competency of this evidence. An election officer was called as a witness and testified that he kept a copy of the registration and voting list of 1924 (the originals being destroyed), and near the bottom of the page is found the name Charles W. Palmer as having voted. It may be assumed that this was the same Charles W. Palmer under consideration in this case. We do not know his version as to the voting, but taken upon its face it would indicate that Palmer had then decided to transfer his domicile to Dayton, Ohio. It also appears from the testimony of certain witnesses that two years later Palmer appeared at the voting place at Pitcairn, Pennsylvania, requested and was given a ballot, and that one of the judges struck his name off the list of voters. No one testified that they saw him deposit his ballot, but we think the fact is evident that he must have done so. It is not material how his name came to be upon the voting list at Pitcairn, but we have a right to assume that Palmer must have changed his domicile from Montgomery county, Ohio, to Allegheny county, Pennsylvania, prior to the date of his voting in 1926.

This, unexplained by any other evidence, would tend to prove that Palmer was a resident of Pennsylvania at the time of voting in that county. There is no evidence tending to prove that he voted at any other time except in 1924, in Montgomery county, Ohio, and in 1926, in Allegheny county, Pennsylvania. In addition to this evidence as to Palmer voting in Allegheny county, Pennsylvania, in 1926, we have the testimony of Dr. W. R. Funk, a prominent business man of Dayton, to the effect that he

and Palmer had taken up the question of his domicile and that Palmer shortly prior to his death had stated to him that his domicile was at Pitcairn, Allegheny county, Pennsylvania. This testimony is corroborated by W. H. McCain, who testified that Palmer said to him that his home was in Pitcairn, Allegheny county, Pennsylvania. Robert L. McGinn testified to the same effect. These witnesses are reputable witnesses and entirely disinterested so far as this controversy is concerned. We have the testimony of several of the relatives of Palmer over in Pennsylvania whose testimony corroborates the fact that he kept a home in one room of Mrs. Rhoades' home where he was privileged to come at any time and stay. It also appears that in the years from 1924 on to and including 1927 he made returns of personal taxes in Allegheny county, Pennsylvania. He made no such returns in Montgomery county, Ohio. Palmer also made entries in his bank books at the banks in Montgomery county a short time prior to his death that, ''I want my estate settled in Pennsylvania. I have no real estate in Ohio. Signed Charles W. Palmer.'' Again the will itself was executed in the state of Pennsylvania and was placed on deposit with the Bessemer Trust Company in Pittsburgh, Pennsylvania, where it remained until Palmer's death. In this will he recites the fact that he was at the date thereof a resident of Allegheny county, Pennsylvania.

He executed no other will or codicil so far as the record here shows. He allowed this will to remain in Pennsylvania and on deposit there until the time of his death. We cannot escape the conclusion that some weight is to be attached to the recitals of his

will, and to the fact that it remained until the time of his death as a presumption that the testator intended to have his estate settled in Pennsylvania.

In the case of *Wilberding, Admr., v. Miller,* 90 Ohio St., 28, 106 N. E., 665, 666, L. R. A., 1916A, 722, the following is laid down in the syllabus: "While the declaration of a testator in his will as to his domicile is not conclusive, yet when there has been no material change in the situation with reference to it, between the execution of the will and the death of the testator, such declaration is evidence of high character, and will determine the question in the absence of more convincing proof to the contrary."

In view of the changes in the life of Charles W. Palmer after his will was executed this presumption may not be of much avail, yet we think it is a circumstance of some weight in determining the question of his domicile. Taking all the evidence into consideration we reach the conclusion that the judgment of the court of common pleas was correct as a matter of law, and that the judgment is not against the tendency or the weight of the evidence and must therefore be affirmed.

*Judgment affirmed.*

HORNBECK and KUNKLE, JJ., concur.