**VILLAGE OF INDIAN HILL v. ATKINS et al.**

Ohio Appeals, First District, Hamilton County.

Decided July 5, 1949.

Steer, Strauss & Adair, Cincinnati, for plaintiff-appellant.
Henry M. Bruestle, James W. Farrell, Jr., Cincinnati, for
defendants-appellees.

## OPINION

By ROSS, PJ.

This is an appeal on questions of law from a judgment
of the Probate Court of Hamilton County.

Charles H. M. Atkins died April 14, 1947. His will was
admitted to probate in the Probate Court of Hamilton County.
Application was made by decedent's son, Warner L. Atkins,
to the Probate Court to fix and determine inheritance taxes.
The son therein gave the decedent's residence as Cincinnati.
The taxes were found by the Court to have **originated** in the
City of Cincinnati, and pursuant to law the Treasurer of
Hamilton County was ordered to distribute one-half of the
amount paid out of the estate to that city.

The proceeding upon which this appeal is predicated was
commenced by the Village of Indian Hill. The purpose of the
proceeding was to secure a reversal of the former order of
distribution of the Probate Court, and an order distributing
the one-half of taxes paid by the estate to the Village of
Indian Hill. This is to be effected, so far as this proceeding
is concerned, by direct claim against the City of Cincin-
nati, as for money had and received to the use of the
petitioner. In view of the conclusions reached, the pro-
priety of so attacking the recipient of the pro-rata share
claimed by appellant is passed without comment or approval.

The prayer for relief was predicated upon the allegation
that the decedent at his death resided and was domiciled in
the Village of Indian Hill, and not the City of Cincinnati.

In the brief of the appellant, the Village of Indian Hill, it
is stated "The City of Cincinnati answered and is the only
party presently interested in the case."

The court, upon request, made separate findings of fact,
and conclusions of law, and entered judgment against the
petitioner-appellant.

The inheritance taxes involved were based upon two types
of assets of the estate—(1) intangibles, (2) personal property
located within the limits of the Village of Indian Hill. This

212

situation presents two independent questions, which will be considered separately herein.

The first problem concerns that illusive element—domicil.

From the evidence, it is clear that the decedent lived, yes, resided for some time prior to his death in a residence located in the Village of Indian Hill. This was his principal place of abode and all the incidents of residence attach to his life in the Village. The title to the property was held by a family holding corporation. The decedent occupied the premises with his wife and son. His wife died shortly after residence was taken in Indian Hill. The decedent and his unmarried son continued to remain in the family home until the decedent's death. At the same time during this entire period the decedent owned a large interest in a family hotel in the City of Cincinnati, known as the Vernon Manor, in which the decedent and his wife had lived for some time previous to moving to Indian Hill, and after a long permanent residence in a home in the City of Cincinnati which was sold.

The decedent at various times stayed for varying periods, especially in the winter, in the Vernon Manor. No particular room was reserved for his use. The Indian Hill home was considered by all as the permanent residence of the son, and the decedent stated when the son married, he, the decedent, would return to Cincinnati. The decedent did not always use the Vernon Manor for temporary residence, but also availed himself of the use of various clubs in the City of Cincinnati, of which Clubs he was a member. The decedent's business was located in Cincinnati. He was for many years recognized as one of that city's prominent business men and was active in its economic and social life up to the time of his death.

Now there can be no question regardless of any evidence of residence in Indian Hill that the decedent expressed a continuing determination that Cincinnati was and should continue to be his domicil. He stated he made his money there and wanted a say in its government. He consistently, without interruption, voted in the city. He said he wanted no part of the government of Indian Hill, and that he did not like the way it was governed. In every way that the decedent could, by declaration, he asserted Cincinnati was his home.

The appellant village asserts that conclusive facts against such determination constituting a bona fide legal domicil are: (1) that the servants of the Indian Hill house were hired, paid, and given instructions by the decedent; (2) that his stays in Cincinnati were prompted only by his

convenience; (3) that decedent repeatedly referred to the village residence as his home; (4) that he gave such residence when applying for ration books; (5) that decedent affirmed under oath in securing automobile and truck registration licenses that the Indian Hill home was his residence for such tax purposes; and (6) that other persons including his son stated that the Indian Hill home was his residence.

These facts present this question: Can one live or reside in one place and have a bona fide intention that another place shall be his domicil?

The evidence in this case conclusively shows that the decedent did entertain a bona fide intention that the City of Cincinnati should be his domicil and entertained such firm resolve at the time of his death. The evidence is also conclusive that no specific spot in the City of Cincinnati was held by decedent as a permanent residence, unless a general attachment to and interest in the Vernon Manor may be considered so. For some purposes, the decedent even used his office in the City of Cincinnati as a reference for certain residence requirements.

Authorities pro and con have been cited, with the claim that they are dispositive of the problems here presented. Upon examination, in almost every case, it will be found that the question presented is whether the person involved could have entertained a bona fide intent of domicil in the presence of facts indicating the contrary. In the instant case, the evidence is overwhelming that the decedent did possess up to the time of his death a bona fide intent that Cincinnati should continue to be his domicil and even his home. It is also clear that decedent attached no permanence to his residence in Indian Hill and planned returning to Cincinnati as soon as his son was married.

Do the facts presented prevent giving effect to such purpose and intent?

At the outset it is to be borne in mind that the decedent had a fixed domicil and legal residence in Cincinnati, and it is the contention of the village that decedent changed that legal residence and domicil and fixed Indian Hill as a new legal residence and domicil.

When a person's legal residence is once fixed, as it was in the case of decedent in Cincinnati, it requires both fact and intention to change it. Denny v. Sumner County, 134 Tenn. 468, 184 S. W. 14, L. R. A. 1917A, 285. Section 17 Am. Jur. "Domicil," Section 16, p. 599.

"In other words, to effect a change of domicil from one locality, state, or country to another, there must be an

actual abandonment of the first domicil, coupled with an intention not to return to it, and there must be a new domicil acquired by actual residence in another place or jurisdiction, with the intention of making the last acquired residence a permanent home. Moreover, the acts of the person must correspond with such purpose. The change of residence must be voluntary; the residence at the place chosen for the domicil must be actual; and to the fact of residence there must be added the animus manendi."

Part of the confusion in the appellant's conception of the inferences to be drawn from the facts is apparent in its oversight that the decedent had a definitely established domicil in Cincinnati and that it is necessary that an intention to abandon that domicil must be shown as well as a more or less permanent residence in the Village. The intention to abandon Cincinnati is completely absent. The contrary is evident. See, also, Section 18. Id., p. 602, where it is stated:

"Inasmuch as one must always have a domicil somewhere and a domicil is not lost until a new one is acquired, a domicil once existed cannot be lost by mere abandonment even when coupled with the intent to acquire a new one, but continues until a new one is in fact gained. To effect the abandonment of one's domicil, there must be choice of a new domicil, actual residence in the place chosen, and intent that it be the principal and permanent residence. This is merely another way of saying that there can be no change of domicil without the concurrence of act and intent.

"It is observed in another section of this article that the right to exercise certain legal rights may be lost by abandoning one's residence or home, although the domicil itself is not lost." See, also: Sections 22 and 23, Id., p. 604.

It is to be observed here that the conflict is between two localities, two political subdivisions, that is, Cincinnati and Indian Hill. Each claim the domicil of decedent. It is not a contest involving two specific residences. In connection with the burden of proof it is stated in 17 Am. Jur., "Domicil," section 86, p. 640:

"One whose right to affirmative relief depends upon establishing his domicil, or the domicil of another, in a given place has the burden of proof as to the issue. This proposition is fundamental. Although the duty of going forward

with the evidence may shift from one party to another, the burden of proof as to the issue never shifts. This distinction must be borne in mind as explanatory of the many cases which state generally that domicil is presumed, prima facie, to be at that place where the party is shown to be or where he is resident and that the burden of proof is on the party who claims that the domicil is elsewhere.

"The rule is well settled that the burden of proving a change of domicil is on the person who alleges it. If a party's right to affirmative relief depends on showing that his domicil has been changed, clearly the burden of proof as to the issue is on him. If, on the other hand, his right to relief depends on showing the continuance of domicil in a particular place, then a showing that he once resided in the place makes out a prima facie case. Residence being a continuous fact it is presumed to continue. The presumption casts upon the other party the duty of going forward with the evidence to meet the prima facie case created thereby."

It has been noted that the decedent frequently stayed at the Vernon Manor and sometimes at clubs, all in the City of Cincinnati. In this connection, a statement in 28 C. J. S. Domicile, §10b, p. 14, is pertinent:

"b. Duration.

"Apart from statutory regulation, no particular period of residence is required to establish domicile, and any residence, however short, will suffice when coupled with intent; without intent, residence, however long continued, will not establish domicile.

"Except as the rule may be affected by statutory regulation, no particular period of residence or specified length of time in a particular place is required in order to establish a domicile, but when coupled with the element of intent to establish a domicile any residence, however short, will be sufficient, even if it is but for a day or an hour. Although a long-continued residence in one place has been regarded, in some decisions, as strong evidence, or even a controlling circumstance, in determining the question of domicile, residence alone, however long continued, will not establish domicile or effect a change of domicile, in the absence of the requisite intention."

These considerations justify the trial court's conclusion that the decedent had never given up his domicil in Cincinnati, and that he intended to change his residence permanently thereto as soon as certain eventualities occurred.

Appellant contends that the language of §5348-14 GC, requires a finding in its favor, owing to the use of the word "resided". A comparison of the several sections applicable to the subject of this section indicates that the legislature, as far as residents of this state are concerned, used the term as synonymous with domicil.

**Sec. 5348-11 GC,** provides for distribution of one-half of taxes to the political subdivision where the tax originates.

**Sec. 5348-14 GC,** has no application to the instant question.

It must be presumed that the legislature knew the general law applicable to taxation and domicil as affecting the estates of decedents and used the term "originates" in the sense of domicil.

At the outset of this opinion it was stated two types of assets of the decedent's estate were involved—intangible and tangible. It is the claim of appellant that §5348-13 GC, requires at least a pro rata share on tangible assets to be allocated to the Village, and this seems to be true.

The city claims this issue was never raised in the trial court. The appellant has transmitted to this court a copy of a letter sent the trial court in which tangible property was mentioned. This court is not cited to any point in the record in which this issue was raised and, therefore, can find no error in the action of the trial court in ignoring the same.

It may be noted in concluding that the provisions of §5348-13 GC, applying to distribution of taxes according to where the tangible assets are "physically located" indicates that it was in the opinion of the legislature necessary to differentiate the term "originates" when applied to physical assets. Certainly, taxes upon tangible property would naturally be considered to originate where physically located. The legislature, therefore, intended to eliminate the question of domicil suggested by the use of the term "originates" and allocate taxes on tangible assets to their actual physical location, regardless of the domicil of the owner.

For the reasons given, the judgment of the trial court is affirmed.

HILDEBRANT and MATTHEWS, JJ, concur in syllabus, opinion and judgment.