**CITY OF EAST CLEVELAND, Appellee,**

v.

**LANDINGHAM et al., Appellants.**

[Cite as *E. Cleveland v. Landingham* (1994), 97 Ohio App.3d 385.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65547.

Decided Oct. 3, 1994.

*James H. Hewitt III,* Director of Law, and *Ronda G. Curtis,* Assistant Law Director, for appellee.

*Ramona E. Paradise* and *U.A.W. Legal Services,* for appellant.

---

HARPER, Judge.

■ Appellant, Jack Landingham, appeals from the judgment of the East Cleveland Municipal Court on an action filed by appellee, the city of East Cleveland, to recover delinquent municipal income taxes. For the reasons that follow, we reverse and remand.

## I

Appellant testified that he was employed by General Motors Corporation ("GMC") for about twenty-nine years. On or about August 29, 1983, he was

transferred to the GMC plant located in Toledo, Ohio. He rented an apartment located at 1933 West Alexis Road, Toledo, and has lived in that apartment until the present.

In 1984 appellant registered to vote in Lucas County. He testified that he had voted in elections there and nowhere else. He produced his W–2 form showing his Toledo address.

In 1985 appellant purchased a vehicle and registered it in Lucas County with his Toledo address. Appellant testified that since moving to Toledo (1984–1988), he has been living separate from his wife, who lives in East Cleveland, and considers himself separated from her. There is no legal document in support of appellant's separation from his wife.

Appellant testified that since moving to Toledo he did not return regularly to East Cleveland, but visited occasionally ("two or three times a year"). He stayed with his daughter who lives in Painesville during most of the visits. He did not support his wife but paid some of her expenses one time when he was approached by her mother for help.

Appellant testified that he and his wife filed joint federal and state income tax returns for the 1984 through 1988 tax years. On their 1988 tax return they listed a deduction for the rent appellant paid on his Toledo apartment. The deduction was listed as a rent away from home. Appellant testified that they made the deduction on the advice of his tax preparer. He did not file East Cleveland income tax returns for the years 1984 through 1988 because he did not consider himself a resident of the city nor did he have any intention of returning to the city.

Delores Landingham testified that she was married to appellant. They had been separated for ten years. They had lived apart since 1984. The first two years after appellant moved to Toledo in 1983, things were fine.

"Like we have been living apart ten years, but until like the first two years it was like a courtship in distance, and then after that I guess he had his life to live and I had my life to live, and we just—we will always be friends. After so many years we will always be friends."

For the first two years she considered him her husband but "he didn't."

Mrs. Landingham testified that appellant did not send her regular support. Appellant did not visit her regularly. He stayed more with his daughter in Painesville. She further testified during direct examination as follows:

"Q. You do consider yourself as separated?

"A. Yes.

"Q. From 1983 until 1988 at least?

"A. Yeah. I think if you don't have a relationship—

"A VOICE: (Inaudible).

"A. —you don't have a relationship with a person, an intimate relationship, I don't know what that's called, but being apart, being separated, just now [*sic*] being together (inaudible)."

On cross-examination, Mrs. Landingham testified that appellant visited her in 1990 when she had a heart attack. He paid the house loan for January 1990 when her mother asked him to help because she was behind in payment. He paid no other bills. She testified as follows upon questioning by the city attorney:

"Q. Okay. Didn't you state to the tax administrator that your husband comes home on weekends, on some weekends, and holidays?

"A. Sometimes on weekends, sometimes on holidays. When he first started working, he was working seven days a week, so how could he come home? On some holidays he did come home.

"Q. When did you have the heart attack what you were saying? [*Sic.*]

"A. I had a heart attack in '90.

"Q. And he came home in what month?

"A. I had it in—I came home in January from the hospital, so he came home right after January.

"Q. Okay. He came home and stayed for a couple—

"A. He didn't stay, just, you know, in and out stayed for two weeks, but he wasn't with me. I had nurses with me. I had a hospital bed in the dining room, so he wasn't with me.

"He came to see that everything was paid. I couldn't pay it, and I didn't get paid from my jobs, so, I mean, house loan, what could I do? Because I didn't have the money. I feel obligated to him. I owe him."

## II

Appellant's sole assignment of error for our review is that:

"The trial court erred in finding judgment for the plaintiff for the 1984 through 1988 tax years in that said judgment goes against the manifest weight of the evidence presented at trial."

Appellant argues that the evidence presented was overwhelmingly in favor of his argument that he did not owe the city any delinquent taxes, and the judgment, therefore, was inconsistent with the judgment of the court.

Appellate review of a manifest-weight argument is guided by the rule enunciated by the Ohio Supreme Court in *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, at 19, 526 N.E.2d 1350, at 1357,

"In reviewing the court's judgment, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Every reasonable presumption must be made in favor of the judgment and the findings of facts. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Finally, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." See, also, *Gates v. Bd. of Edn. of River Loc. School Dist.* (1967), 11 Ohio St.2d 83, 40 O.O.2d 91, 228 N.E.2d 298; *Ross v. Ross* (1980), 64 Ohio St.2d 203, 204, 18 O.O.3d 414, 415, 414 N.E.2d 426, 427–428.

In view of the above rule, the sole issue to be determined in the instant case is whether there was sufficient evidence on the record to establish that appellant was domiciled in East Cleveland during the tax years in question, and, therefore, subject to the payment of municipal income taxes.

Codified Ordinances of East Cleveland 191.0312 and 191.0316 define nonresident and resident as follows:

" 'Nonresident' means an individual domiciled outside the City of East Cleveland."

" 'Resident' means an individual domiciled in the City of East Cleveland."

It is a fundamental principle of law that every individual must have a domicile somewhere, and that an individual cannot have more than one domicile at the same time. *Grant v. Jones* (1883), 39 Ohio St. 506; *Hill v. Blumenberg* (1924), 19 Ohio App. 404; *Sturgeon v. Korte* (1878), 34 Ohio St. 525; see, also, *Texas v. Florida* (1939), 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed.2d 817.

## DEFINITION OF DOMICILE

■ Domicile has been defined as a place where a person lives, or has his home, a place where an individual has his true, fixed, permanent home and principal residence established, a place to which the individual intends to return whenever he is absent, and from which he has no present intent to move. See *Sturgeon v. Korte, supra.* As held by the United States Supreme Court in *Williams v. N. Carolina* (1944), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, "Domicil implies a nexus between person and place of such permanence as to

control the creation of legal relations and responsibilities of the utmost significance." *Id.* at 229, 65 S.Ct. at 1095, 89 L.Ed. at 1581.

## ACQUISITION OF DOMICILE

■ We have stated above that every person must have a domicile somewhere. *Sturgeon v. Korte, supra.* It is also a well-established rule of law that no one loses his old domicile until a new one is acquired. *Saalfeld v. Saalfeld* (1949), 86 Ohio App. 225, 41 O.O. 94, 89 N.E.2d 165; *Larrick v. Walters* (1930), 39 Ohio App. 363, 177 N.E. 642; *Bd. of Edn. of Oakwood City School Dist. v. Dille* (1959), 109 Ohio App. 344, 11 O.O.2d 139, 165 N.E.2d 807; *Cunningham v. Bessemer Trust Co.* (1931), 39 Ohio App. 535, 178 N.E. 217; *Spires v. Spires* (1966), 7 Ohio Misc. 197, 200–202, 35 O.O.2d 289, 292, 214 N.E.2d 691, 693–695. Thus, abandonment of one's domicile is effected only when a person chooses a new domicile, establishes actual residence in the place chosen and shows a clear intent that it be the principal and permanent residence.

■ In summary, Ohio law on the acquisition of domicile requires two essential elements, which are usually expressed in Latin as *factum* and *animus,* or residence and intention to remain. See *Anderson v. May* (1951), 91 Ohio App. 557, 48 O.O. 132, 107 N.E.2d 358, reversed on other grounds (1953), 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221. While the law remains that a person retains the old domicile until a new one is shown to be acquired by the concurrence of fact and intent, no one acquires a new domicile or loses the old one by the mere fact that he intends to move elsewhere and prepares to do so or that he is physically in a new location without any intent to remain there. *In re Estate of Huston* (1956), 165 Ohio St. 115, 59 O.O. 130, 133 N.E.2d 347. Even after the formation of the requisite intent to domicile in a new location, a person remains a domiciliary of the old location until he actually arrives at the new location and acquires a dwelling place. See *In re Estate of Michal* (P.C.1939), 16 O.O. 110, 30 Ohio Law Abs. 300, 2 Ohio Supp. 163, holding that where a person, domiciled in a certain county in Ohio, started to leave the state with the intention of never returning, but was killed while in transit, his domicile continued in the former county, and the appointment of an administrator in any other jurisdiction was without jurisdiction and void. See, also, *DiDomenico v. DiDomenico* (May 9, 1991), Cuyahoga App. No. 58543, unreported, 1991 WL 76077.

## BURDEN OF PROOF

■ The burden of proof of domicile rests upon the party whose right to affirmative relief depends upon establishing his domicile or the domicile of another in a given place. *Indian Hill v. Atkins* (App.1949), 57 Ohio Law Abs. 210, 90 N.E.2d 161.

■ In the instant case, since the city's collection of delinquent taxes depends upon its establishing that appellant is a domiciliary of the city, the initial burden of proof of appellant's domicile rests upon the city. See *In re Stephan* (P.C.1940), 17 O.O. 361, 31 Ohio Law Abs. 457, 5 Ohio Supp. 21. This reasoning flows from the logical result of the law that domicile is presumed to be where he resides (in the instant case in Toledo where appellant presently resides), a presumption which controls unless rebutted by evidence establishing his domicile in some other place at that time. See 25 American Jurisprudence 2d (1966) 61, Domicil, Section 84, 36 Ohio Jurisprudence (1982) 367, Domicil, Section 19. *In re Estate of Paich* (App.1962), 90 Ohio Law Abs. 470, 186 N.E.2d 755, reversed on other grounds (1964), 1 Ohio St.2d 66, 30 O.O.2d 37, 203 N.E.2d 314.

■ The facts presented by the city to establish that appellant is domiciled in the city are as follows:

"1) Defendant himself declared his East Cleveland address as his home by taking a deduction on his 1988 Federal Income Tax Return for his Toledo, Ohio apartment as rent away from home.

"2) In addition, although Defendant testified that he was separated from his wife, there was no separation agreement or other documentation to support this fact.

"3) The testimony of Defendant's wife was that although they lived apart, the relationship was initially like a long distance courtship. Ms. Landingham confirmed that she did not consider herself to be separated from her husband.

"4) The East Cleveland Deputy Tax Administrator testified that Mrs. Landingham appeared before her pursuant to subpoena and referred to Defendant as her husband and further stated that he (Defendant) comes 'home' on some weekends and holidays.

"5) In addition, other factors which must be considered concern the circumstances of the Defendant, which includes the fact that he was 53 years of age at the time of his employment transfer. He was earning a substantial salary at General Motors Corporation and had been employed there for 19 years at the time of his transfer."

While the facts presented by the city to establish domicile are weak, they are sufficient to shift the burden of proof to appellant only because a person is presumed to continue his old domicile until it is clearly shown that he has acquired a new one. *Saalfeld v. Saalfeld, supra.* Appellant, in order to rebut the presumption that he remained domiciled in East Cleveland, must show by the preponderance of evidence that he (1) intended to change his domicile, (2) intended to select a new domicile, and (3) accompanied such intention with acts indicating a bona fide selection of a new domicile. *Id.*

## INTENT

■ As in any question involving a persons's intent, it is difficult to discover what a person's intentions are at any particular time. And as always courts must draw their own conclusions from all the facts and circumstances of each case in determining a person's intent to change domicile. Helpful facts include a person's acts and declarations and surrounding circumstances such as family relations, business pursuits and vocation, mode of life, means, fortune, earning capacity, conduct, habits, disposition, age, prospects, residence, lapse of time, voting and payment of taxes. *Cleveland v. Surella* (1989), 61 Ohio App.3d 302, 572 N.E.2d 763. See *Baraket v. Baraket* (C.P.1937), 10 O.O. 395, 2 Ohio Supp. 184; *Smerda v. Smerda* (C.P.1947), 35 O.O. 472, 48 Ohio Law Abs. 232, 74 N.E.2d 751; *Kaplan v. Kuhn* (1901), 11 Ohio Dec. 321, 333, 8 Ohio N.P. 197.

In the instant case, appellant testified with supporting documents that he moved in 1983 to Toledo and established residence in Toledo for the tax years in question. He had no intention of coming back to East Cleveland. He showed his intention to abandon East Cleveland by registering to vote in Lucas County. He also changed his vehicle registration to Lucas County. He listed his Toledo address in all federal tax returns he filed for the years in question. Appellant considered himself separated from his wife and did not visit his wife often. He did not support his wife from his new place of abode. When he returned to the Cleveland area, he stayed with his daughter who lives in Painesville. He filed a declaration of exemption from filing income tax in East Cleveland because he did not consider himself domiciled in the city. Appellant also filed a sworn statement of his intent to abandon the city.

After a careful examination of the record, it is our opinion that appellant's testimony and proof of other facts, physical and external, indicate his state of mind to abandon East Cleveland and establish a new domicile in Toledo. It is an established rule in Ohio that one's voting in a particular location is evidence of his intent to be domiciled there, and a continuing vote also manifests an intent to remain a legal resident of the place in question. *Hill v. Blumenberg, supra.* Thus, appellant's voting in Lucas County and the lack of evidence of his intent to stop voting there do not favor the city's contention.

■ Also, nothing is more obvious in a man's intent not to return than the abandonment of his wife without regular visits or support. Irregular weekend and holiday visits "from time to time" are insufficient to overcome the presumption of abandonment in the particular facts of this case. See *Redrow v. Redrow* (1952), 94 Ohio App. 38, 51 O.O. 266, 114 N.E.2d 293.

The city's main argument is the fact that appellant in his 1988 federal income tax return took a deduction for his Toledo apartment as a rent away from home.

This conduct, from East Cleveland's point of view, implies that appellant intended to remain domiciled in the city. But we have already stated that one cannot intend to have two domiciles, and where facts lead to a possible inference of two intentions, one intention then must outweigh the other. In the instant case, appellant's acts of abandonment outweigh any interpretation of his intent to remain domiciled in East Cleveland.

## CONCLUSION

After a careful review of the record, we conclude that while the federal income tax deduction may have been improper, it is insufficient to demonstrate an intent to domicile in the city. The city's argument that there is no separation agreement to support appellant's claim of separation from his wife and appellant's wife's reference to appellant as her husband are also insufficient in the face of appellant's evidence to the contrary, and we are not persuaded. A party can legally separate from his spouse and still retain the same domicile as his spouse. A person can also lose the domicile previously shared with his spouse without the benefit of a legal separation. It is all a matter of intent.

Since as a general rule the most trustworthy evidence of the actual intention of a party whose domicile is in dispute is to be found in his acts, *Baraket, supra,* the record in the instant case overwhelmingly shows that appellant intended to abandon East Cleveland and establish domicile in Toledo.

Accordingly, we reverse the trial court's judgment on the weight of the evidence and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed.*

SPELLACY, P.J., and PORTER, J., concur.