**CITY OF WARREN**

v.

**REBHAN, Exr., et al.**

 2011-Ohio-2941.]

Court of Common Pleas of Ohio,
Probate Division, Trumbull County.

No. 2010 CVA 0016.

Decided Jan. 3, 2011.

James E. Sanders, for city of Warren.

Stuart A. Strasfeld, for Eric J. Rebhan and Regina Rebhan.

Alan P. Schwepe, Assistant Attorney General, for Tax Commissioner of Ohio.

Matthew G. Vansuch, for Vienna Township.

R.R. DENNY CLUNK, Judge.

{¶ 1} This matter came on for a hearing before the court on November 18 and 19, 2010, on a complaint for a declaratory judgment filed by the city of Warren, Ohio, against Vienna Township, Trumbull County, Ohio; Eric J. Rebhan and Regina Rebhan, coexecutors of the estate of John C. Rebhan, deceased; and the Ohio Department of Taxation. The complaint requests a declaration by the court that John C. Rebhan was domiciled in the city of Warren at the time of his death and that by virtue of his domicile, Warren is entitled to the allocation of the Ohio estate tax attributable to his Warren domicile. Presiding for the court was Judge R.R. Denny Clunk, sitting by assignment. Appearances were made by James E. Sanders, attorney for the city of Warren; Stuart A. Strasfeld, attorney for defendants Eric J. Rebhan and Regina Rebhan, coexecutors of the estate of John C. Rebhan; Alan P. Schwepe, assistant attorney general for defendant tax

commissioner of the state of Ohio; and Matthew G. Vansuch, attorney for defendant Vienna Township.

{¶ 2} Testimony was received and a stenographic record was made of the proceedings. Plaintiff's exhibits A through L and P through S were admitted without exceptions; defendants' exhibits 1 through 25 and 28, 30, 31, 35, 36, 37, 40, and 41 were admitted without exceptions; defendants' exhibits 32, 33, and 34 were admitted, exceptions to plaintiff; and defendants' exhibits 26, 27, 38, and 42 were denied admission, exceptions to defendants. At the conclusion of plaintiff's case in chief, defendant Vienna Township moved for a directed verdict. The motion was denied; exceptions to defendants were noted. At the conclusion of the proceedings, legal counsel for the parties agreed to submit posttrial briefs in lieu of final oral arguments.

{¶ 3} The single issue before the court is, where was the domicile of John C. Rebhan at the time of this death on December 30, 2008? Specifically, was it, as the plaintiff claims, the residence at 3625 East Market Street, Warren, or as defendants claim, the residence at 5000 Creekside Boulevard, Vienna Township? For purposes of simplicity, the court will refer to the 3625 East Market Street residence as the Warren property and the 5000 Creekside Boulevard residence as the Vienna property. The court notes that the word "domicile" is also spelled "domicil" in some judicial opinions.

{¶ 4} There are many facts that are not in dispute and were evidenced by the following exhibits, which were submitted by plaintiff and defendants and were admitted to record by the court without objection:

(1) John C. Rebhan acquired the Warren property on or about August 16, 1976. (Exhibit B.) This property was transferred to the John C. Rebhan Family Trust by a deed dated October 30, 2007, but not recorded until January 2, 2009. (Exhibit C.)

(2) John C. Rebhan acquired the Vienna property on or about October 8, 1996. (Exhibit G.) This property was transferred to the John C. Rebhan Family Trust by deed dated October 30, 2007, but not recorded until October 9, 2009. (Exhibit D.)

(3) Florida death certificate showing Vienna property as decedent's residence and date of death of December 30, 2008. Informant's name was Eric Rebhan. (Exhibit 28.)

(4) Trumbull County auditor's record shows Warren property received 2½ percent homestead exemption. (Exhibit E.)

(5) Trumbull County auditor's record shows Vienna property did not receive the 2½ percent homestead exemption. (Exhibit F.)

(6) Ohio title to a 2005 Chevrolet issued September 22, 2008, names the owner as "John C. Rebhan, 3625 E. Market Street, Warren, Ohio 44484." (Exhibit Q.)

(7) Form 1040 U.S. Individual Income Tax Returns for the years 2002 to 2008 for John C. Rebhan state his home address to be "5000 Creekside, Vienna, Ohio 44473." (Exhibits 12 to 18.)

(8) W–2 Wage and Tax Statement for years 2008, 2007, 2006, 2005, 2004, 2003 and 2002 show "Employer's name, address and zip code as Warren Fabricating Corp., 3240 Mahoning Avenue N.W., Warren, Ohio 44482" and "Employee's name, address and zip code as John C. Rebhan, 5000 Creekside Drive, Vienna, Ohio 44473." (Exhibits 19 to 25).

(9) Invoice from Sleepy Hollow Sleep Shop Company, Inc. dated December 17, 2001, for delivery of bedding to "5000 Creek Boulevard SE, Vienna, Ohio 44473." (Exhibit 36.)

(10) Invoice from K & N Sales, Inc., dated February 19, 1999, for kitchen appliances addressed to Peter Kozup, 5000 Creekside Drive, Vienna, Ohio 44473. (Exhibit 37.)

(11) Ohio Department of Motor Vehicle records for years 2000 to 2008 show various motor vehicle registrations to John C. Rebhan and one to John Rebhan Family Trust, all with a mailing address of 3625 E. Market Street, Warren, Ohio 44484. (Exhibit O.)

(12) Obituary (Exhibit K) in Tribune Chronicle states, "John C. Rebhan II, 64 of Warren, died Tuesday, December 30, 2008 at his home in Ft. Lauderdale, Florida."

(13) The will of John C. Rebhan, dated the September 2, 2004, recites: "I, John C. Rebhan of 3625 E. Market Street, Warren, Ohio 44483, being of full age * * * declare this to be my Last Will and Testament." Trumbull County Probate Court, case No. 2009 EST 0019 (Exhibit A).

(14) Bank One Consumer Signature Card, dated August 10, 1996, with John C. Rebhan and Peter C. Kozup, as authorized signatories on this checking account. Checking account name was "EJR Creekside," and the address of the account was 5000 Creekside, Vienna, Ohio 44473. (Exhibit 31.)

(15) Trumbull County real estate tax bill for Warren property for second half 2009 is addressed to Sue Beck, 3240 Mahoning Avenue, Warren, Ohio 44483. (Exhibit H.)

{¶ 5} The law is very clear that a person may have more than one residence but only one domicile. The word "domicile" is derived from the Latin "domus,"

meaning home or dwelling house, and domicile is the legal conception of home. Black's Law Dictionary (4th Ed.1951). The Supreme Court of the United States in *Williams v. North Carolina* (1944), 325 U.S. 226, 229, 65 S.Ct. 1092, 89 L.Ed. 1577, defined "domicile" as follows: "Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance."

{¶ 6} The Ohio Supreme Court has also addressed the issue of domicile versus residence in *In re Hutson's Estate* (1956), 165 Ohio St. 115, 59 O.O. 130, 133 N.E.2d 347, as follows:

When a person's legal residence is once fixed * * * it requires both fact and intention to change it. In other words, to effect a change of domicile from one locality, county, or state to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place, with the intention of making the last acquired residence a permanent home. * * * The change of residence must be voluntary; the residence at the place chosen for the domicile must be actual and to the fact of residence, there must be added the animus manendi, which means, the mind to remain.

"Animus manendi" is defined in Black's Law Dictionary (4th Ed.1951) as "the intention to establish a permanent residence."

{¶ 7} In addition to opening statements by legal counsel for the parties and the posttrial briefs, the court had the opportunity to hear from witnesses, all of whom gave credible testimony. Specifically, the court heard from decedent's two children, Regina Rebhan and Eric J. Rebhan; Susan Rebhan, the decedent's former wife; Monica Susan Lasky, girlfriend of Eric J. Rebhan; Richard Stiffler, the president of Warren Fabricating Corporation; John Senoyuit, a long-time friend; James Baer of McFarland & Son Funeral Home, the funeral director; Pete Kozup, the construction supervisor for the Vienna property; Brian Crain, a carpenter, who did extensive work at the Vienna property; and Brian Darbey, Vienna Township police chief.

{¶ 8} In sum, the collective testimony of the witnesses demonstrated that John C. Rebhan's original domicile and residence was the Warren property, which he acquired in 1976; that the Vienna property, which was acquired in 1996, was not habitable until sometime in 2001 or 2002; that the last time the swimming pool at the Warren property was used was at Regina Rebhan's wedding on June 3, 1995; that John C. Rebhan was an avid collector of valuable antiques, which he stored at the Warren property; and that John C. Rebhan conducted the purchase of antiques from the Warren property and maintained the property as an office away from his corporate office. Susan Rebhan testified that she tried to make the Warren property a home despite its size and that after her divorce, she

visited him infrequently there; however, she testified that in later years, the house was filled with antiques to the point that it was not livable, particularly the kitchen, which was stacked with antique magazines and Christie's auction catalogs, and that the "house was more like a museum." Regina Rebhan testified that in contrast to the newly constructed, decorated, and furnished Vienna property, the Warren property had deteriorated in that it needed paint, the outdoor pavilion where he kept his two Mercedes was in disarray and needed to be torn down, and the outdoor pool was not operational. John Senoyuit testified that he and John Rebhan ate dinner together several times a week and if they went out, he would drive, picking him up at the Vienna property and returning him there. The testimony from the various witnesses was uncontroverted that from at least 2002 to his death, John C. Rebhan lived at the Vienna property, that is, he ate there, slept there, hosted family gatherings for birthdays and holidays there, and met his friends there.

{¶ 9} Brian Darbey, Vienna Township police chief, testified that he answered an alarm on August 14, 2000, and upon arriving at the Vienna property, he met John C. Rebhan, who advised him that he was the owner of the property and was living there.

{¶ 10} It is also uncontroverted that John C. Rebhan visited the Warren property frequently, purchased antiques from there, received his personal mail at that address, and kept a car in the driveway to indicate some occupancy.

{¶ 11} The only area of inconsistent testimony was in relationship to the obituary in the Tribune Chronicle. James Baer of McFarland & Son Funeral Home testified that he prepared the obituary and submitted it to Regina Rebhan and Eric Rebhan for their approval. Eric Rebhan testified that he was in Florida attending to arrangements there and had no conversation with Baer or a review of the obituary before it was published describing decedent as a resident of Warren. Regina Rebhan also testified that she did not preapprove the publication. The court gives little credence to this issue because of the factual disagreement.

{¶ 12} At what point, if ever, did the Warren property cease to be the domicile of John C. Rebhan and the Vienna property replace it?

{¶ 13} Each property provided different functions for John C. Rebhan. The Warren property was his office, the site for purchasing and storing his antiques, and his mailing address. The Vienna property was his home, that is, the place he ate, slept, and enjoyed family gatherings.

{¶ 14} This court acknowledges the apparent inconsistencies in the use of addresses of the decedent's will, automobile title registrations, and real estate tax mailing address at the Warren property; however, none of these designations in

of themselves creates a proof of domicile; they are rather a proof only that he had a residence in Warren.

{¶ 15} The address shown on Exhibits 12 to 18, the Form 1040 income tax Returns stating John C. Rebhan's home address as 5000 Creekside, Vienna, Ohio 44473, and Exhibits 19 to 25, showing 5000 Creekside Drive, Vienna, Ohio 44473, as his address, together with no evidence that he was subject to and paying Warren income tax, are strong indications that the Vienna property was his domicile.

{¶ 16} This court also finds that a declaration of a testator in the testator's will as to residence is not conclusive when there has been a material change of the testator's residence/domicile between the execution of the will (plaintiff's exhibit A is dated September 2, 2004) and the date of death (defendants' exhibit 28 shows date of death as December 30, 2008). This court finds from the overwhelming testimony of family members and friends that during the four years and nearly four months between the execution of the will and the date of death, and as previously stated as early as 2002, John C. Rebhan intentionally changed his domicile to the Vienna property and accompanied that intention with acts indicating a selection of a new domicile.

{¶ 17} It has been stated in numerous judicial opinions that it is difficult to ascertain a person's intentions at any particular time and thus the court must draw its own conclusions from the facts and circumstances of each case in determining a person's intent to change domicile. This court has looked at circumstances such as family relations, mode of life, conduct, residence, lapse of time, voting, age, and payment of taxes.

{¶ 18} Over the years from 1996 through 2002, John C. Rebhan made the Warren property less habitable as a home and the Vienna property more habitable as a home. His intent to make a house a home is evidenced by his use of the Vienna property and, in contrast, his conversion of the Warren property from a domicile/residence to an office and sanctuary for his valuable antique collections.

{¶ 19} The burden of proof of domicile rests upon the party whose right to affirmative relief depends upon establishing his domicile or the domicile of another in a given place. In this case, that is the city of Warren. *E. Cleveland vs. Landingham* (1994), 97 Ohio App.3d 385, 391, 646 N.E.2d 897.

{¶ 20} There were two factual issues that were not presented to the court by testimony that might have been beneficial in determining the intention of the decedent as to his domicile, specifically, his registration for voting and the payment of Warren income tax. The court must conclude that John C. Rebhan

was not a registered voter and that he did not pay Warren income tax (this is stated in the posttrial brief of Eric Rebhan and Regina Rebhan).

{¶ 21} In conclusion, the court has considered all of the exhibits, particularly those that contain street addresses. In determining what weight is to be given to those exhibits, the court has considered the author of the information on the document, the relationship of the author to John C. Rebhan, and the date of the document. The court also considers the testimony of Regina Rebhan that many of the ministerial acts of processing real estate tax payment information were done by his employees at Warren Fabricating Corporation. The court also considers the quality of the information and not necessarily the quantity of the information.

{¶ 22} Therefore, this court finds by the preponderance of the evidence that John C. Rebhan abandoned his domicile at the Warren property sometime in 2002 and acquired a new domicile in the Vienna property at that time and continued to maintain the Vienna property as his domicile until his death.

{¶ 23} This is a final, appealable order.

{¶ 24} There is no cause for delay.

So ordered.