**DRAPER, Plaintiff-Appellee, v. DRAPER, Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 5691. Decided February 18, 1958.

Olin L. Parrett, Columbus, for plaintiff-appellee.

William J. Ahern, of Schwenker, Teaford, Brothers & Solsberry, Columbus, for defendant-appellant.

## OPINION

By BRYANT, J.

This is an appeal on questions of law from the judgment entered March 12, 1957 by the Franklin County Common Pleas Court, Division of Domestic Relations. It is claimed that the court below committed prejudicial error in dismissing a petition to vacate a judgment granting a divorce.

In the opinion, Melbourne H. Draper, the husband, plaintiff-appellee, will be referred to as plaintiff and Lillian A. Draper, his wife, defendant-appellant herein, will be referred to as defendant.

It appears that the parties were married June 22, 1947 in St. Paul, Minnesota and that two children were born of the marriage—Debra Susan on March 12, 1949 and Wanda Marlene on June 30, 1950, both of whom have since been and are now in the custody of their mother.

It appears that Draper enlisted in the Air Force and after serving at several stations, on April 14, 1951 was assigned to the 301st Food Service Squadron, Lockbourne Air Force Base near Columbus, Ohio and from and after August 1, 1951, Draper, who held the title of Staff Sergeant in the Air Force, resided at 3777 Alum Creek Drive, which address is not a part of the Air Force Base and is located within Franklin County, Ohio.

On August 21, 1954, Sgt. Draper filed his petition for divorce charging that Lillian A. Draper was guilty of wilful absence for more than one year, it being the claim of plaintiff that his wife had left him on November 7, 1949 and had not associated with him since that date.

According to the transcript, the court below heard the case on December 29, 1954, rendered judgment, no answer having been filed, and granted the prayer of Sgt. Draper's petition for divorce from Lillian A. Draper but awarded custody of the two minor children to Mrs. Draper. On June 25, 1955, Mrs. Draper filed a petition to vacate the judgment granting her husband a divorce and tendered an answer which denied she was guilty of wilful absence. As the dismissal of the said petition to vacate the divorce decree is the sole error claimed, it will be necessary to consider the allegations of this petition.

The prayer of the petition was that the divorce decree be vacated and set aside and the defendant permitted to file an answer. It was claimed that the husband obtained the divorce "through fraud practiced upon her (Mrs. Draper) and through irregularities on the part of the plaintiff (Sgt. Draper) in obtaining said judgment."

In support of her claim of fraud and irregularities, Mrs. Draper in her petition alleged in part as follows:

"1. That said plaintiff was at the time of the filing of his petition a member of the Armed Forces, specifically, The Army Air Force, 301st Food Handling Squadron, Lockbourne Air Base, Franklin County, Ohio. Further, that the plaintiff enlisted in the Armed Forces at Chanute Field in the State of Illinois; that at the time of said enlistment the

plaintiff and the defendant were living as man and wife in a permanent domicile located at 5107 Youngs Road, R. F. D. No. 2, Jackson, Michigan.

"2. That the plaintiff filed his petition August 21, 1954 giving the address of the defendant as 490 Collins Street, St. Paul, Minnesota; that on the same day plaintiff filed an affidavit that the defendant's last known address was 940 Collins Street, St. Paul, Minnesota; that on August 25, 1954 the plaintiff caused publication pursuant to his attempt to secure service by publication, to be made using an address of 1541 B. Timber Lake Rd., St. Paul, Minnesota; that said publication appeared August 25, 1954, September 1, 8, 15, 22 and 29, 1954, using said address. That the plaintiff on November 12, 1954 did file a second affidavit stating that the defendant's last known address was 1541 B. Timber Lake Rd., St. Paul, Minnesota. That plaintiff had knowledge of this address prior to the publication on August 25, 1954. Further that this Court rendered its Decree on December 29, 1954. That there was no publication made at any time after the filing of the plaintiff's affidavit under date of November 12, 1954.

"Defendant therefore says that this plaintiff did not have at the time of filing of his petition bona fide residence and domicile in the State of Ohio and Franklin County for the length of time as required by statute, §3105.03 R. C. Further, that the plaintiff did know the defendant's address at the time of the filing of his petition or could have with reasonable diligence ascertained same and that the defendant has not been properly served by publication as required by Statute, §3105.06 R. C."

With reference to the claim that Sgt. Draper was a resident of Jackson, Michigan at the time of his enlistment in the Armed Forces from which it would appear to be the claim of Mrs. Draper that he, therefore, could not several years later be a resident of Ohio and of Franklin County, the trial court on March 12, 1957 made a finding "that the plaintiff, at the time of the filing of his petition was a bona fide resident of the State of Ohio and (had) a domicile in the State of Ohio for more than one year preceding the filing of said petition and had been a bona fide resident of the County of Franklin for more than ninety (90) days immediately preceding the filing of his petition."

It appears to be well settled that the domicile of a person entering the Armed Forces is not changed by the mere fact that he changes his place of abode but on the contrary is presumed to remain as it was at the time of entering upon such service. It appears equally clear that upon the presentation of proper evidence a member of the Armed Forces may show he has in fact changed his domicile. This subject has been considered exhaustively in a series of annotations including 106 A. L. R. 6, 148 A. L. R. 1413, 156 A. L. R. 1465 and 159 A. L. R. 496. In 148 A. L. R. 1413 there is a discussion of the general rules governing the gaining or losing of a residence by a soldier or sailor because of his transfer from one place to another under military orders. The following statement appears at page 1413 of the above annotation:

"The terms 'domicil' and 'residence,' although sometimes used synonymously, are frequently held not to be convertible and to have

distinguishing characteristics. 'Domicil' ordinarily has a broader meaning than 'residence.' It includes residence. Actual residence, however, is not essential to retain domicil after it is once acquired. Residence is, furthermore, preserved by an act; domicil, by an act coupled with an intent. Domicil is not determined by residence alone. * * *" See 17 Am. Jur. 593, 594, Domicil, §9.

"It is universally held that in order to acquire a domicil by choice these elements must concur; (1) residence (bodily presence) in the new locality, and (2) an intention there to remain. Act and intent must therefore concur and the absence of either of these thwarts the change. In addition, there must be an intention to abandon the old domicil. * * *"

The same annotation at page 1414 says as follows:

"The residence or domicil of a person in the military or naval service is simply a question of intent. The actual residence of a soldier or sailor, since it is not the result of his own volition, does not, of itself, operate to change the residence or domicil which he had when he entered the service. Therefore in absence of a contrary intent, it will be assumed that that continues to be his present residence or domicil."

Again at page 1415 of said annotation it is stated:

"But the actual residence of a soldier or sailor may become his residence or domicil if there are other circumstances sufficient to spell out an intent on his part to abandon his original residence or domicil and adopt a new one."

The right of a person in the Armed Forces to select a domiciliary residence different from that which he had when he entered the Armed Forces is recognized in **Glassman v. Glassman, 75 Oh Ap 47.**

It is, therefore, our conclusion that the trial court correctly found that Sgt. Draper met the requirements of residence or domicile within the State of Ohio and within Franklin County, Ohio to permit him to bring the action for divorce.

The second objection raised by Mrs. Draper has to do with alleged defects in service by publication. It appears that in the affidavit filed by Sgt. Draper he clearly stated that Mrs. Draper could not be served within the State of Ohio and that her last known address was in St. Paul, Minnesota. In the caption of the petition Mrs. Draper's address in St. Paul is 490 Collins Street, which street address was set forth in the affidavit for service by publication. However, in the legal advertisement published six times in the Daily Reporter, Mrs. Draper's address is given as 1541 B. Timber Lake Road, St. Paul, Minnesota. However, the clerk of courts mailed the summons and copy of the petition on August 21, 1954 to Mrs. Draper at 490 Collins Street in St. Paul, Minnesota from which place it was returned unopened by the postal department. On November 12, 1954 a new affidavit was filed by plaintiff setting forth the address as 1541 B. Timber Lake Road, St. Paul, Minnesota and the clerk made a new mailing of the summons and copy of the divorce petition to Mrs. Draper at 1541 B. Timber Lake Road, St. Paul, Minnesota. On behalf of Mrs. Draper it is claimed that because there was not a new publication in the newspaper after the filing of the second affidavit

there was a fatal defect in service which rendered the court's jurisdiction defective.

With this we do not agree. It is admitted by all concerned that Mrs. Draper in fact had resided at one time at 490 Collins Street in St. Paul, Minnesota. It also appears that after the petition and first affidavit were filed, plaintiff's attorney by the exercise of commendable diligence found she had moved and proceeded to take steps which eventually resulted in actual (in addition to constructive) notice reaching Mrs. Draper. It is admitted by all concerned that the petition and summons mailed November 12, 1954 did actually reach Mrs. Draper. The fact that counsel she employed may have been negligent in not taking any action during the six weeks which followed cannot be charged to the plaintiff. The fact remains that Mrs. Draper did not file her petition to vacate the divorce decree for more than seven months after she had, by her own admission, received actual notice of the pendency of this action.

The trial court in ruling on Mrs. Draper's petition to vacate the decree found that she was "duly served with summons and a copy of the petition."

In our judgment the ruling of the trial court was correct. For the reasons above set forth, in the opinion of this court, the assignment of errors is not well taken and will be overruled and the judgment of the court below will be affirmed.

PETREE, PJ, MILLER, J, concur.