## Spires v. Spires.

(No. 13855—Decided March 8, 1966.)

*Messrs. Crow, Crow & Porter,* for plaintiff.
*Mr. Joseph H. Hans,* for defendant.

Bacon, J.   Plaintiff, a career serviceman, filed an action for divorce in this court on December 1, 1965; summons issued and personal service was obtained upon defendant December 2, 1965. by the sheriff of Franklin County.

Defendant by counsel filed her motion to strike the action from the files for the reason that plaintiff had not been a bona

fide resident of Meigs County for more than 90 days immediately preceding its filing, which motion came on for hearing and evidence was taken.

The evidence discloses defendant resides at No. 405, Apartment 2, North Virginia Lee, Columbus, Ohio, where the summons was served upon her. That the plaintiff resided in Meigs County, Ohio, for more than three years prior to his enlistment in the U. S. Army in 1959; that throughout such service, which has been virtually continuous, he maintained Middleport, Ohio, as his "Home of Record," in his official records.

Plaintiff's Exhibit 1, copy of Special Orders 184, September 28, 1965, assigning plaintiff to 13th Psychological Warfare Battalion, Ft. Bragg, N. C., indicates his Home of Record as Box 5, Middleport, Ohio, and his temporary address as 4480 Blendon Drive, Columbus, Ohio. This latter residence, assigned as "temporary" is apparently the same as indicated in defendant's Exhibit 1, a letter dated November 19, 1965, addressed to defendant, 4480 Blendon Drive, Route 1, Gahanna, Ohio, 43020.

The custodian of plaintiff's official military records at Headquarters, 13th Psychological Warfare Battalion, Fort Bragg, North Carolina, 28307, certifies plaintiff's "home of record" upon his re-enlistment into the U. S. Army on June 21, 1962, was Box 5, Middleport, Meigs County, Ohio.

Defendant's exhibit, War Department Form 214 (1 Nov. 55) Armed Forces of the United States Report of Transfer or Discharge, filed with defendant's brief after the taking of testimony, reveals that plaintiff's domicile or legal residence at time of entry on the service of his country in June 1959, was 34 S. 5th Street, Middleport, Meigs County, Ohio. This exhibit also relates that plaintiff transferred to the United States Army Reserve May 8, 1962, at Ft. Dix, N. J., and his "Permanent Address for Mailing Purposes after transfer" was 174 N. State St., Westerville, Franklin County, Ohio.

It appears, however, that plaintiff intended to pursue a career in the United States Army, that he did in fact re-enlist, June 21, 1962, and, from the testimony, the transfer and re-enlistment maneuver was for the purpose of lengthy assignment of service at Fort Hayes in Franklin County. The maneuver succeeded. Plaintiff was at Fort Hayes for two years.

Plaintiff's mother testified that he had been living with her

in Middleport when he enlisted; that he has had mail at Box 5, Middleport, ever since he entered the service.

From the testimony of defendant it appears she married plaintiff in Meigs County, August 29, 1959, shortly after he had entered the service. Her domicile prior to marriage was with her parents in Mason County, W. Va., immediately across the Ohio River from Middleport.

Defendant avers that when she and plaintiff entered into a land contract August 13, 1962, for a residence at 5350 Walnut-view Drive, Columbus, Ohio, this manifested his intention to make his domicile in Franklin County. And by her exhibit filed February 7, subsequent to the testimony taken, she views that he indicated like intention when he gave to the Army Reserve as his permanent address for mailing purposes after transfer No. 174 North State Street, Westerville, Franklin County, Ohio.

As to the land contract the court rejected plaintiff's offer to show that at that time in Columbus suitable housing was not available for his dependants at reasonable rentals, and that better quarters for the money were obtained by making a contract to purchase a home; that the payments would give them an equity, portion of which might be realized at time of resale. Probably this testimony was admissible.

At first blush it might appear that plaintiff was selecting a domicile in Franklin County when he contracted to buy residence property there. And almost the entire marriage history of the parties having taken place in Franklin County, it might be more convenient for the defendant to litigate a divorce action in the courts of that county.

However, we are not here concerned with Section 3105.04, Revised Code, which allows a wife to divorce herself from the residence of her husband in filing a petition under Section 3105.03, Revised Code. The question is: Does plaintiff have the required residence in Meigs County that he can maintain the instant action?

For the answer to that question we are compelled to look at the entire record. Defendant did not offer any evidence connected with the plaintiff's intentions when they first established a residence in Franklin County in the year 1959. It would be presumed that by remaining in Franklin County in 1962, the

parties were continuing what had been commenced some years earlier. It has been said that tomorrow is but the lengthened shadow of yesterday.

It is quite obvious that in the many years the parties resided in Columbus, the plaintiff performed many acts normally connected with domicile; but one must consider that all of them are also consistent with acts required or appropriate for a serviceman, who has his family with him at his military assignment.

The plaintiff during his career has been assigned to several military posts in the United States. He has been in Turkey prior to re-enlistment. In May 1964, he was sent to Okinawa after two years at Fort Hayes. It was testified that plaintiff arranged for moving defendant and their children to reside with him at his Okinawa post, but cancelled the orders and failed to provide the funds when domestic difficulties arose. It may be that it was also about this time default was made under the land contract and the owner repossessed in December 1964.

It is commonly stated that an essential element of the judicial power to grant a divorce, or jurisdiction, is domicile, and the use of the term "residence" or the like in a divorce statute is generally deemed to import the requirement of domicile. 24 American Jurisprudence 2d, Divorce, Section 246, p. 401. Ohio courts are in accord. *Glassman* v. *Glassman,* 75 Ohio App. 47; *Saalfeld* v. *Saalfeld,* 86 Ohio App. 225; *Draper* v. *Draper,* 107 Ohio App. 32.

The terms "domicile" and "residence," although sometimes used synonymously, are frequently held not to be convertible and to have distinguishing characteristics. "Domicile" ordinarily has a broader meaning than "residence." It includes residence. Actual residence, however, is not essential to retain domicile after it is once acquired. Domicile is not determined by residence alone. Moreover, while one can have only a single domicile, he may have several residences.

To effect a change of domicile from one locality or state to another, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last-acquired residence a permanent home. The rule is well settled

that domicile once established continues until it is superseded by a new domicile, and that the old domicile is not lost until a new one is acquired.

Defendant relies upon a general rule that the very fact of actual residence in a place tends to prove domicile in that place, that it is prima facie evidence of domicile. But this rule does not apply to a person in the armed services, since a change of residence by such a person is not by volition but by order of superior military authority.

This court feels it might be better argued that plaintiff when he conceived the idea of discharge, transfer to the army reserve, and re-enlistment at Fort Hayes, with view to a more lengthy assignment there, intended to change his domicile to Columbus. But, the trouble is that it points up the realization of plaintiff that while in active service any military assignment will have few years of duration at best, and he may merely have wanted assurance of not having to leave them or re-establishing them for as long as possible.

Then is it not very significant that defendant allowed plaintiff to apply for orders that his family join him in Okinawa? She gave his failure to provide funds as the reason that the orders were never consummated. Her readiness to go is not indicative that plaintiff or defendant intended residence in Franklin County as choice of domicile.

The residence or domicile of a person in the military service is simply a question of intent. The actual residence of a military person, since it is not the result of his own volition, does not, of itself, operate to change the residence or domicile which he had when he entered military service.

The reports are profuse with cases where the serviceman was denied the forum of the jurisdiction of his military post for the very reason that he possessed no actual domicile there, but was merely present on temporary military assignment. *Mohr* v. *Mohr,* 206 Ark. 1094, 178 S. W. 2d 502; *Randle* v. *Randle,* Tex. Civ. App., 178 S. W. 2d 570; *Wells* v. *Wells,* Tex. Civ. App., 177 S. W. 2d 348; *Marshall* v. *Marshall,* 130 Conn. 655, 36 A. 2d 743; *Gates* v. *Gates,* 197 Ga. 11, 28 S. E. 2d 108; *Pettaway* v. *Pettaway,* Tex. Civ. App., 177 S. W. 2d 285; *Perry* v. *Perry,* Tex. Civ. App., 181 S. W. 2d 133; *Kilian* v. *Kilian,* Tex. Civ. App., 185 S. W. 2d 611; *Feldstein* v. *Feldstein,* 208 Ark. 928, 188 S. W. 2d 295.

Although in *In re Estate of Palmer*, 28 N. P. (N. S.) 200, divorce was not involved, the Common Pleas Court of Montgomery County wrote an excellent opinion and the judge cites Wharton on Conflict of Laws:

" 'Mere absence can never, by itself, divest domicile, no matter how long such absence may continue. The absentee, whether he wander from place to place for pleasure or on business, may continue this absence for years, but until a new domicile is acquired, the old remains. * * * The *animus* to abandon one domicile for another, said Lord Curriehill, in a Scotch case, "imports an intention not only to relinquish those peculiar rights, privileges and immunities which the law and constitution of the domicile confers—in the domestic relations, in purchases and sales, and other business transactions, in political or municipal status, and in the daily affairs of common life—but also the laws by which succession to property is regulated after death." The abandonment or change of a domicile is therefore a proceeding of a very serious nature, and an intention to make such a change is required to be proved by very satisfactory evidence.' "

Earlier, in his opinion in *In re Estate of Palmer*, the judge quoted from Judge Rapallo's decision in *Dupuy* v. *Wurtz*, 53 N. Y. 556,

" 'With respect to the evidence necessary to establish the intention, it is impossible to lay down any positive rule. Courts of justice must necessarily draw their conclusions from all the circumstances of each case, and each case must vary in its circumstances; and moreover, in one a fact may be of the greatest importance, but in another the same fact may be so qualified as to be of little weight. 12 Moore Priv. C. C. 330.' "

Palmer, a Civil War veteran, in October 1908, entered the National Military Home in Dayton. Prior thereto, upon his wife's death, he sold his home in Pitcairn, Pa., to his niece. His death occurred in November 1928, at the Military Home, where, since 1916 he had remained continuously. His estate consisted entirely of $300,000 in securities deposited in a box in the Dayton Savings & Trust Co. Shortly before he died he entered into a contract with the McCain Realty Company for the construction of 15 houses for a consideration running into thousands,

and by that contract he was designated as being "of Dayton, Ohio." He voted at the Soldier's Home in 1924.

However, throughout his lifetime Palmer had been concerned about claiming Pennsylvania for his domicile, and his various declarations, including that in his will, which he deposited with the Bessemer Trust Co., Pittsburgh, Pa., were sufficient to overcome the strong presumptions of long residence, business contracts and casting of his ballot in an Ohio election. Probate of his will in Pennsylvania was confirmed.

There are several extremely strong cases for the presumption that the domicile and residence of a soldier while in the army does not shift, but remains at the place from which he was inducted or enlisted, and to which the army would naturally return him. *Lawrence* v. *Lawrence,* 184 Misc. 515, 53 N. Y. S. 2d 288; *Zimmerman* v. *Zimmerman,* 175 Ore. 585, 155 P. 2d 293.

In the *Zimmerman case, supra,* the serviceman's testimony concerning his *animus manendi* was virtually disregarded when the evidence disclosed he had been drafted in Ohio and sent to a permanent military post in Oregon.

In *Johnson* v. *Johnson,* 313 Ill. App. 193, 39 N. E. 2d 389, the plaintiff entered the Naval Academy, Annapolis, Md., in 1914 from his native Winnebago County. Other than infrequent visits to his mother's home at Rockford, one in 1925, one in 1928, he had no further connection with his domicile until he commenced divorce proceedings there 28 years later.

Justice Dove said:

"The fact that he has a bank account in Annapolis, Maryland, none in Rockford, Illinois, has no charge account in any Rockford store, has never asked appellant to live with him in Illinois and never voted in Illinois since his marriage, are not sufficient to overcome or discredit his positive testimony that Rockford has always been his legal residence and that he has always claimed it as such."

See also *Knowlton* v. *Knowlton,* 155 Ill. 158, 39 N. E. 595.

*Nixon* v. *Nixon,* 329 Pa. 256, 198 A. 154, was similar to the *Johnson case.* An army officer was not precluded from maintaining a divorce action at his domicile of origin, although he had actually purchased a house in Washington, D. C., and given that place as his residence when buying auto tags.

204

There are, of course, cases where divorce actions were finally determined by courts in jurisdictions encompassing the military establishment.

*Gipson* v. *Gipson,* 151 Fla. 587, 10 So. 2d 82; *Hawkins* v. *Winstead,* 65 Id. 12, 138 P. 2d 972; *Warfield* v. *Warfield,* Tex. Civ. App., 161 S. W. 2d 533; *Percy* v. *Percy,* 188 Cal. 765, 207 P. 369; *Struble* v. *Struble,* Tex. Civ. App., 177 S. W. 2d 279; *Kokinakis* v. *Kokinakis,* Mo. App., 180 S. W. 2d 243; *Burgan* v. *Burgan,* 207 La. 1057, 22 So. 2d 649. But examination of them discloses that usually the serviceman testified in support of *animus manendi* and there were facts manifesting such intent, such as arranging to go into business upon cessation of hositilities.

If jurisdiction remains disputed when this case is heard upon its merits, there likely will be additional facts presented to aid the court. However, upon the facts as heretofore presented, including the exhibits, defendant's motion must be denied.

*Motion denied.*