LeSUEUR, ADMX., APPELLEE, *v.* ROBINSON ET AL., APPELLANTS. ■

10

(No. F-87-11—Decided
July 29, 1988.)

*Marc J. Meister* and *Teckla H. Meister,* for appellee Marjorie LeSueur, Admx. WWA.

*Morton Bobowick, Donald E. Theis* and *Judith K. Ruud,* for appellants Kapen Robinson, Marilyn Morris and Ardelle Magid.

*Roger D. Tibbetts,* for *amicus curiae* Lakewood, Ohio.

CONNORS, J. This cause is before the court on appeal from a judgment of the Fulton County Court of Common Pleas, Probate Division, finding that it has jurisdiction to probate the will of Hanna Larsen LeSueur, deceased.

The pertinent facts shown by the record are as follows. The deceased was a domiciliary of Lakewood, Cuyahoga County, Ohio, for at least fifty years. On July 25, 1986, LeSueur, then ninety-six years old, and her son with whom she lived in Lakewood were both admitted to a Lakewood hospital; her son died some three weeks later.

Hanna LeSueur was examined by a hospital psychiatrist who, concluding that Hanna probably had chronic dementia, recommended guardianship and long-term custodial care. A family friend applied for appointment as Hanna's guardian in the Cuyahoga County Probate Court, but the referee rejected the application on statutory grounds. A disinterested party, George Maloof, then applied for appointment as LeSueur's guardian. An informal discussion was held on September 15, 1986, with the referee; Maloof; and Fred and Marjorie LeSueur, Hanna's nephew by marriage and his wife. Hanna LeSueur, though served with notice, was not present. Fred LeSueur indicated his desire to be appointed Hanna's guardian, and the referee, believing the nephew to be Hanna's blood relation, continued the hearing until Fred LeSueur could apply for guardianship.

On September 17, 1986, Hanna was moved to a Lucas County nursing home pursuant to arrangements made by Fred and Marjorie LeSueur. During her two and one-half month stay, Hanna LeSueur did not visit the LeSueurs in their Fulton County Home. In fact, the record shows that she had never been present in Fulton County, nor had she ever voted, owned land, or paid taxes there. Virtually all her real property and personal property were located in Cuyahoga County. Fred LeSueur filed with the Fulton County Probate Court for guardianship on September 19, 1986, representing in his application that Hanna's legal settlement or residence was at his Fulton County home. The probate court granted the application, and letters sent to the Cuyahoga County probate referee led him to assume everything was in proper order, and he withdrew Maloof's guardianship application.

Hanna LeSueur died in Lucas County on December 3, 1986. Funeral services and burial were in Cuyahoga County. Her 1937 will declared her to

be a resident of Lakewood, Cuyahoga County. No devisees or executors were surviving. Marjorie LeSueur was appointed administratrix and filed the will for probate in the Fulton County Court of Common Pleas, Probate Division, on December 5, 1986. The heirs-at-law objected to this court's jurisdiction, arguing that the decedent's domicile at death was Cuyahoga County. From the judgment finding the will admissible for probate in Fulton County, the heirs timely appealed. The city of Lakewood, Cuyahoga County, filed an *amicus curiae* brief.

Appellants offer five assignments of error:

"I. The Fulton County Probate Court erred in finding it had subject matter jurisdiction to probate decedent's will for the reason that decedent was never physically present in Fulton County.

"II. The Fulton County Probate Court erred in finding that Hanna Larson [*sic*] LeSueur was domiciled in Fulton County by operation of law to probate her will for the reason that Hanna LeSueur already had an established domicile by choice.

"III. The Fulton County Probate Court erred in finding that decedent's domicile was Fulton County by operation of law to give it jurisdiction to probate decedent's will for the reason that decedent was never physically present in Fulton County.

"IV. The Fulton County Probate Court erred in finding that the application for the guardianship of Hanna LeSueur filed in Fulton County was not misleading.

"V. The Fulton County Probate Court erred in finding decedent was domiciled in Fulton County to give it subject matter jurisdiction to probate decedent's will based upon professed intentions and conduct of third persons."

All these assignments of error ad-dress substantially the same issues and will, therefore, be considered together.

The trial court reasoned that the domicile of an incompetent person becomes that of his guardian; therefore, Hanna LeSueur's domicile became Fulton County, this domicile continuing until her death. Thus, the trial court concluded that Fulton County would have jurisdiction to probate her will under R.C. 2107.11, which states:

"A will shall be admitted to probate:

"(A) in the county in which the testator was domiciled if, at the time of his death, he was domiciled in this state[.]"

In their combined assignments of error appellants challenge this conclusion by contending that Fulton County does not have the jurisdiction to probate LeSueur's will because the decedent was not a resident of Fulton County at the time of the guardianship proceeding. Thus, that proceeding was invalid and LeSueur's domicile could not be changed by operation of law to that of her purported guardian, Fred LeSueur. After an analysis of Ohio case and statutory law and a careful review of the record in the case *sub judice*, we concur with appellants' reasoning.

While there is some limited case law supporting appellee's assertion that an incompetent takes the domicile of her guardian, it is distinguishable from the case at bar because it is premised on a valid guardianship appointment. See *Trustees of Jackson Twp.* v. *Trustees of Polk Twp.* (1869), 19 Ohio St. 28, 29. R.C. 2111.02 governs the appointment of guardians and provides, stating in pertinent part that:

"(A) When found necessary, the probate court on its own motion or on application by any interested party shall appoint * * * a guardian of the

person, the estate, or both, of a minor or incompetent, *provided the person for whom the guardian is to be appointed is a resident of the county or has a legal settlement in the county* and *\* \* \* has had the opportunity to have the assistance of counsel in the proceeding* for the appointment of such guardian." (Emphasis added.)

The appointment of Fred LeSueur as Hanna's guardian did not meet statutory jurisdictional requirements because she had neither a residence nor legal settlement in Fulton County. *Smith* v. *Petry* (Sept. 30, 1986), Lucas App. No. L-86-067, unreported. "Residence" is not synonymous with "domicile," but has been defined as simply meaning "a place of dwelling." *In re Fore* (1958), 168 Ohio St. 363, 371, 7 O.O. 2d 127, 131, 155 N.E. 2d 194, 199-200. See, also, *Smith, supra,* at 3. It is well-settled that residence requires the actual physical presence of a person at some place of abode coupled with an intent to remain at that place for some period of time. *Franklin* v. *Franklin* (1981), 5 Ohio App. 3d 74, 76, 5 OBR 186, 188, 449 N.E. 2d 457, 460; *Saalfeld* v. *Saalfeld* (1949), 86 Ohio App. 225, 55 Ohio Law Abs. 156, 41 O.O. 94, 89 N.E. 2d 165; *In re Estate of Stephan* (P.C. 1940), 31 Ohio Law Abs. 457, 17 O.O. 361, 5 Ohio Supp. 21; *Spires* v. *Spires* (C.P. 1966), 7 Ohio Misc. 197, 35 O.O. 2d 289, 214 N.E. 2d 691; *In re Guardianship of Rawlins* (June 7, 1983), Marion App. No. 9-82-47, unreported. See, also, Black's Law Dictionary (5 Ed. 1979) 1177. Legal settlement also requires that the proposed ward actually dwell in the county seeking to exercise its jurisdictional power over the appointment of a guardian. *Rawlins, supra;* R.C. 5113.05.

The record of the instant case makes abundantly clear the fact that Hanna LeSueur was never physically present in Fulton County. Hence, she never resided in nor was ever legally settled in Fulton County. Accordingly, the Fulton County Probate Court was without jurisdiction to appoint a guardian for LeSueur under R.C. 2111.02. Absent this jurisdiction, the appointment by that court of Fred LeSueur was, therefore, null and void. *Fore, supra; Rawlins, supra.* See, also, 53 Ohio Jurisprudence 3d (1984) 43, Guardian and Ward, Section 33.

Furthermore, because the decedent was a resident of Cuyahoga County when the guardianship proceedings were initiated, the Cuyahoga County Probate Court had sole and exclusive jurisdiction to appoint a guardian. R.C. 2111.471 allows for transfer of jurisdiction when a ward moves to, and acquires a legal settlement or residence in, a new county. Even assuming that LeSueur acquired a residence in Lucas County during her stay at the nursing home there, the proper forum for a transfer of jurisdiction would then have been Lucas County. In addition, there is no showing that the Cuyahoga County referee transferred or was requested by appropriate procedures to transfer, to *any* other county. Therefore, sole and exclusive jurisdiction to appoint a guardian for Hanna LeSueur remained in Cuyahoga County.

The Fulton County Probate Division was without jurisdiction to appoint a guardian for the decedent; thus, her domicile could not have become that of her guardian so as to confer jurisdiction upon the Fulton County Probate Division for the probating of her will. The evidence in the record of the proceedings below shows that Hanna LeSueur's domicile,[1] for

---

[1] "Domicile" is defined as:

" 'That place in which a man has voluntarily fixed the habitation of himself and

family, not for a mere special or temporary purpose but with the present intention of making a permanent home for an unlimited

purposes of R.C. 2107.11, was the domicile of her choice, to wit, Cuyahoga County.

The party asserting a change of domicile bears the burden of proving that the domicile of a testator has changed prior to his or her death. *Stephan, supra.* See, generally, 36 Ohio Jurisprudence 3d (1982) 367, Domicil, Section 19. Appellee failed to provide sufficient evidence to sustain this assertion. On the contrary, the record shows that Hanna resided at 1460 Elbur Avenue in Lakewood, Ohio, Cuyahoga County, for some fifty years. She voted, attended church, and participated in various civic and social groups in Cuyahoga County as well. Her last will and testament recites her residence as being in Cuyahoga County. At no time did decedent make any effort to change her domicile nor was she ever physically present in Fulton County. Throughout her stay in Lake Park Hospital and Nursing Care Center in Lucas County, Ohio, Hanna expressed no intent to change her domicile such as forwarding her mail to the domicile of Fred and Marjorie LeSueur or moving her personal property to their home of her own accord.[2] Fred LeSueur's intent to eventually have his aunt by marriage reside in his home is irrelevent for the purpose of establishing the domicile of a testator and jurisdiction to probate a will. The present intention to make a place of dwelling one's permanent home must be observed in the testator, not third parties. *Wilberding* v. *Miller* (1914), 90 Ohio St. 28, 106 N.E. 665; *Stephan, supra; In re Estate of Paich* (App. 1962), 90 Ohio Law Abs. 470, 186 N.E. 2d 755. Appellee offered *no* credible evidence that decedent was ever a domiciliary of Fulton County. Therefore the trial court's finding that said county was the domicile of Hanna LeSueur for probate purposes was in error. Furthermore, we specifically hold that the domicile of Hanna LeSueur at the time of her death was shown by credible and competent evidence to be Cuyahoga County. It follows, *a fortiori,* that the Fulton County Court of Common Pleas, Probate Division, did not have the jurisdiction to admit the testator's will to probate or to approve Marjorie LeSueur as administratrix WWA of the estate of Hanna Larsen LeSueur. Accordingly, appellants' first, second, third, fourth, and fifth assignments of error are found well-taken.[3]

---

period.' " *In re Estate of Paich* (App. 1962), 90 Ohio Law Abs. 470, at 473, 186 N.E. 2d 755, at 757, quoting Black's Law Dictionary.

See, also, Black's Law Dictionary (5 Ed. 1979) 435.

[2] Nor was the decedent likely domiciled in Lucas County at the time of her death, as she expressed no intent to change her established domicile to Lucas County upon being moved from Cuyahoga County by her nephew prior to his appointment as guardian. Until a new domicile is conclusively established, the earlier domicile continues. *State, ex rel. Johnson,* v. *Washburn* (C.P. 1944), 30 O.O. 435, 439, 16 Ohio Supp. 31, 35-36.

[3] The issue of the standard and procedures for an incompetency determination sufficient to support the appointment of a guardian were not raised by appellants in this appeal. We are compelled to note, however, that the trial court conducted the guardianship process in this instance in an exceedingly summary fashion. Recent case law indicates that prior to the appointment of a guardian a proposed ward must be proven mentally incompetent by "clear and convincing evidence." *In re Guardianship of Corless* (1981), 2 Ohio App. 3d 92, 94, 2 OBR 104, 106-107, 440 N.E. 2d 1203, 1205; *In re Guardianship of Gallagher* (1981), 2 Ohio App. 3d 218, 220, 2 OBR 238, 240, 441 N.E. 2d 593, 595; *In re Guardianship of Slack* (Nov. 4, 1985), Lucas App. No. L-85-145, unreported. In view of our aging population, the recognition that the volun-

14

On consideration whereof, we find that substantial justice has not been done the parties complaining, and the judgment of the Fulton County Court of Common Pleas, Probate Division, is hereby reversed. An application to probate the last will and testament of Hanna Larsen LeSueur may now be filed in the appropriate forum. Costs assessed to appellee.

*Judgment reversed.*

HANDWORK and GLASSER, JJ., concur.

———

tary imposition of a guardianship deprives the individual of a fundamental right becomes increasingly important.