**In re ADOPTION OF KOSZYCKI.**

[Cite as *In re Adoption of Koszycki* (1999), 133 Ohio App.3d 434.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–980741.

Decided May 14, 1999.

Croswell & Adams Co., L.P.A., and Gregory L. Adams, for appellants.

Robbins, Kelly, Patterson & Tucker, Randy J. Blankenship and Thomas M. Gaier, for appellee.

---

PAINTER, Judge.

The issue before us, so far as we can determine, has never been decided by any Ohio court. The question is: Does a consent to adoption, properly executed and filed by a child's biological mother, survive the dismissal of a contemporaneously filed petition for adoption, so that the initial consent constitutes a valid consent to adoption in a subsequent petition for adoption filed by the same petitioners concerning the adoption of the same child?

## I. The Facts and Procedure to Date

The following facts are undisputed. In 1990, Jennifer Holt, the biological mother, filed an application for approval or placement of her fourteen-month-old child in the home of Gerald and Janet Koszycki. She also filed a properly executed consent to adoption that stated that she consented to the adoption "as proposed in the petition." The consent also contained language that the consent was "voluntarily executed irrespective of disclosure of the name or other identification of the prospective adopting parents." The Koszyckis filed their petition for adoption of the child on the same date. The petition provided evidence of Holt's consent, and while it identified Larry Ward as the putative father, the petition stated nothing concerning his consent. Following a hearing on Holt's application, the probate court approved the child's placement with the Koszyckis.

Ward filed an objection to the proposed adoption. The Koszycis filed an amended petition alleging that Ward's consent was not necessary because he had abandoned the child. After a hearing, the probate court determined that Ward had not abandoned the child and had adequately objected to the petition. The probate court recognized that Holt had consented to the adoption, but because Ward's necessary consent had not been obtained, the court dismissed the petition for adoption. It granted temporary custody of the child to the Koszyckis and certified the case to the juvenile court for "appropriate action and disposition." The Koszyckis appealed the dismissal of their petition to this court, and we affirmed the dismissal based on Ward's right to object to the adoption.

In 1991, the biological father, Ward, petitioned for custody of the child in juvenile court. Holt testified unfavorably to Ward at that hearing. The juvenile court recognized that the probate court had granted the Koszyckis temporary custody of the child because Holt had relinquished custody and because Ward did not have a relationship with the child. The juvenile court denied Ward's petition for custody and granted the Koszyckis legal custody, with neither parent being ordered to pay child support. In 1997, the Koszyckis filed a petition for adoption of the child, who was then eight years old, indicating that the biological mother's consent to adopt had previously been filed and that the putative father's consent was not necessary. They also filed a motion captioned "Motion to Transfer and Adopt Previous Consent." The biological mother, Holt, filed a motion to withdraw her consent.

The magistrate asked the parties to brief the issue of whether "a consent executed in 1990 for an adoption proceeding filed in 1990, which was subsequently dismissed, is effective for an adoption proceeding commenced in 1997." In a well-written opinion, the magistrate determined that (1) the signing of the consent was not a total relinquishment of parental rights, (2) the probate court had made no finding that the consent would survive the dismissal of the petition, and (3) the

juvenile court's finding that the mother had relinquished custody did not refer to the consent to the adoption. It concluded that the legislature intended that a consent to adoption be effective only for the petition with which it is filed. The Koszyckis filed objections to the magistrate's decision. The trial court adopted the magistrate's decision and denied the Koszyckis' motion to transfer and adopt the biological mother's consent to adopt. It is the denial of their motion to use Holt's prior consent to adoption to support their current adoption petition that the Koszyckis appeal.

## II. The Adoption Code

The adoption of a child is a serious matter for the biological parents, for the adoptive parents, and, most especially, for the child. The adoption legally terminates a child's relationship with his or her biological parents, and it "seeks to transform the child's collection of relationships and, in effect, give the child a new identity."[1] "Ultimately, the goal of adoption statutes is to protect the best interests of children."[2]

■ Consequently, in order to protect the inherent rights of biological parents and the best interests of children, which include the encouragement of adoption in general and an expeditious and positive adoption specifically, the Ohio legislature has enacted statutes, now codified in R.C. Title 31, to regulate adoptions. To answer the question posed by this appeal, we must review the applicable statutes and attempt to discern the legislature's intent in enacting them.

### A. Legislative Intent in Language Used

■ Our main consideration in construing a statute is the legislative intent based on a review of the language used. In the review of statutes to discern the legislature's intent, "it is the duty of the courts to give a statute the interpretation its language calls for where this can reasonably be done, and the general rule is that no intent may be imputed to the Legislature in the enactment of a law, other than such as is supported by the language of the law itself."[3]

■ This duty is based on the presumption that the legislature knows the meaning of words and chooses the specific words contained in a statute to express its intent. Consequently, a court may not use words not in the statute to add to

1. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 327, 574 N.E.2d 1055, 1062.

2. *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 651, 665 N.E.2d 1070, 1073.

3. *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 236, 36 O.O. 554, 556–557, 78 N.E.2d 370, 374.

or limit the expressed legislative intent.[4] Further, a court may not ignore the plain language of the statute "under the guise of statutory interpretation or liberal or narrow construction."[5] Moreover, "strict construction does not require that we interpret statutes in such a manner that would mandate unjust or unreasonable results."[6]

■ The legislature has made extensive changes in the Adoption Code over the last five decades. In 1953, the adoption statutes were codified in R.C. Chapter 3107. On January 1, 1977, the legislature repealed R.C. 3107.01 through 3107.14 and enacted R.C. 3107.01 to R.C. 3107.19. Since that time, the legislature has continued to alter the laws to make numerous changes, resulting in the Adoption Code now in effect.

In its earlier attempts at regulating adoptions, the legislature provided in R.C. 3107.06(D) that "[s]uch consents shall be applicable to only the specific adoption proposed by the petition. Such consents may not be withdrawn after the entry of an interlocutory order, or after the final decree of adoption." Obviously, were that language still the law, Holt's previous consent would have expired with the original petition. But, in 1977, the legislature *repealed* R.C. 3107.06. The legislature placed the material contained in the former version of R.C. 3107.06 in several sections[7] in the new Adoption Code: *none of these statutes contained the language that consent was applicable only to a specific adoption.* The legislature thus specifically deleted that language from the law.

■ Further, the statutes do not place a time limit on the effectiveness of a consent to adoption. In fact, since 1977, the legislature has deemed a consent to adoption to be irrevocable.[8] Thus, consent to adoption is viable until the court grants a motion to withdraw it, which must be filed before the entry of an interlocutory order or the entry of a final order of adoption.[9]

---

4. *Id.* at 237, 36 O.O. at 557, 78 N.E.2d at 374.

5. *State ex rel. Massie v. Gahanna–Jefferson Pub. Schools Bd. of Edn.* (1996), 76 Ohio St.3d 584, 588, 669 N.E.2d 839, 843.

6. *In re Adoption of Zschach, supra,* at 655, 665 N.E.2d at 1076.

7. See (1) the new version of R.C. 3107.06 (consents required), (2) R.C. 3107.07 (consents not required), and (3) R.C. 3107.09 (withdrawal of consent).

8. See former R.C. 3107.09 and current R.C. 3107.084.

9. Cf. *In re Adoption of Frank* (Mar. 11, 1986), Greene App. No. 85CA54, unreported, 1986 WL 3191 (R.C. 3107.09 makes no mention of the filing of a petition and clearly states that a consent for adoption cannot be retracted or revoked and may be withdrawn only prior to order or decree of adoption.).

### B. Legislative Intent for Separate Legal Documents

 Furthermore, the legislature clearly intended that a consent to adoption and a petition for adoption be two separate legal documents. R.C. 3107.05(A)(1) through (10) outline all that is required to be in an adoption petition. As to the consent to adoption, R.C. 3107.05(B) states that copies of "the required consents, and relinquishments of consents, if any, shall be filed with the clerk." Besides clarifying that a consent to adoption and a petition for adoption are two separate legal documents, this statute does not specify that the consent to adoption to be filed is specifically applicable to a particular petition. Other statutes in the Adoption Code also stress the distinction between the two documents.[10] In addition, the statute regarding execution of consent does not require that a petition be filed prior to the execution and does not require that the consent to adopt provide a name or identify the adoptive parent, as long as it contains a statement that it is voluntarily executed irrespective of such disclosure.[11]

While the consent to adoption may be necessary to provide the probate court with subject-matter jurisdiction to grant a petition for adoption, the petition to adopt and the consent to adoption are clearly two separate documents and are not necessarily joined. Therefore, the dismissal of the petition for adoption does not invalidate the consent to adopt. By way of analogy, the dismissal of a foreclosure action does not invalidate the mortgage upon which the foreclosure was based, nor does the dismissal of a breach-of-contract action make the underlying contract a nullity. Based upon the above rules and the plain language of the Adoption Code, we conclude that a consent to adoption is not limited to a particular adoption petition, and that a consent to adoption is not limited by time. If the legislature had wanted to so limit a consent to adoption, it obviously knew how to do so. But the legislature deleted the previous language that so provided, and it made a consent to adoption irrevocable. The legislature's intent that a consent to adoption not be specifically applicable to a certain petition for adoption or be effective for a limited time is clear. What the Adoption Code establishes is that a petition to adopt may require a biological mother's consent to adoption, but that a consent to adoption does not require a petition to adopt. (Obviously, at one point Holt also believed her consent was ongoing. She made no objection to the probate court's initial determination that she had consented to adoption or to the juvenile court's statement that she had relinquished custody of her child or its

---

10. See, e.g., R.C. 3107.04 (caption for petition); R.C. 3107.05(A) (petition for adoption); R.C. 3107.06 (consents required); R.C. 3107.07 (consents not required); R.C. 3107.08 (execution of consent); R.C. 3107.09, currently R.C. 3709.084 (withdrawal of consent).

11. R.C. 3107.08.

determination that she was not to pay child support.) The code also provides that withdrawal of that consent may be sought by motion before the adoption of her child.

## C. Ohio Supreme Court Precedent

While we recognize that the Ohio Supreme Court has not directly addressed the issue before us, we find further support for our conclusion that the dismissal of the adoption petition in this case did not vitiate the consent to adoption, in the court's conclusion in *Morrow v. Family & Community Servs. of Catholic Charities, Inc.*[12] In that case, the court determined that a consent relinquishing permanent custody provided by the biological parents in a subsequently vacated dependency and neglect action could stand as the consent to adoption required under R.C. 3107.05(B), so as to grant the probate court jurisdiction to proceed with an adoption proceeding. R.C. 3107.05(B) requires that "ordinary copies of the required consents, and relinquishments, if any, be filed with the clerk." The vacation of the order divesting parental rights and granting custody to Catholic Charities did not invalidate the properly executed consent. Although the consent in *Morrow* involved permanent relinquishment, the Supreme Court converted that permanent relinquishment to an institution into a viable independent consent to adoption. Not only did the vacation of the underlying order in that case fail to void the consent, but the consent actually survived in another form.

## III. Conclusion

The legislature, in balancing the best interests of children and the biological parents' right to raise their children, has determined that a consent to adopt is (1) not applicable only to the adoption proposed in a specific petition and (2) irrevocable. Both of these measures are meant to decrease the uncertainty in adoption proceedings and to protect the best interests of a child. The inherent rights of the biological parents are protected by allowing a parent's withdrawal of consent to adopt before certain orders are entered. Here, Holt's motion to withdraw her consent is pending. If the probate court finds that it is in the best interest of the child to allow her to withdraw her consent at this time, it will allow her to do so. Thus, we conclude that Holt's consent to adoption survived the dismissal of the Koszyckis' first petition for adoption and can be used in support of their current petition. We sustain the Koszyckis' assignment of error.

---

**12.** *Morrow v. Family & Community Serv. of Catholic Charities, Inc.* (1986), 28 Ohio St.3d 247, 28 OBR 327, 504 N.E.2d 2.

Accordingly, we reverse the trial court's judgment denying the Koszyckis' motion to transfer and adopt previous consent and remand this cause for further proceedings.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., and WINKLER, J., concur.