[Cite as *In re Adoption of W.M.J.*, 2025-Ohio-3166.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF W.M.J., A MINOR | : | C.A. No. 30444 |
| | : | |
| | : | Trial Court Case No. 2024 ADP 00084 |
| | : | |
| | : | (Appeal from Common Pleas Court-Probate Division) |
| | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on September 5, 2025, the judgments of the trial court are affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

ROBERT G. HANSEMAN, JUDGE

TUCKER, J., concurs and HUFFMAN, J., concurs in judgment only.

**OPINION**
MONTGOMERY C.A. No. 30444


ARVIN S. MILLER, Attorney for Appellant
KENT J. DEPOORTER, Attorney for Appellee


HANSEMAN, J.

{¶ 1} This case is before us on the appeal of the biological mother, V.J. ("Mother"), from two judgments of the probate division of the Montgomery County Common Pleas Court ("probate court") concerning the adoption of her minor child, W.M.J. One judgment found the probate court had jurisdiction over the adoption petition filed by A.J. ("Stepmother"); the other determined that Mother's consent to the adoption of W.M.J. was not needed. According to Mother, the probate court lacked jurisdiction over the adoption proceeding because neither Stepmother nor the biological father, J.J. ("Father"), physically lived in Montgomery County, Ohio, when the adoption petition was filed.

{¶ 2} After reviewing the record and applicable law, we find no legal error or abuse of discretion in the probate court's exercise of jurisdiction over the adoption petition. The court properly considered Stepmother's status as a military spouse and her intention about her legal residence. The court found the testimony of Stepmother and Father credible concerning their intent to return to Montgomery County upon the conclusion of Father's military service. We defer to a trial court's credibility determinations and find the court's decision was supported by sufficient evidence. Accordingly, the judgments of the probate court are affirmed.

## I. Facts and Course of Proceedings

{¶ 3} On July 11, 2024, Stepmother filed a petition with the probate court seeking to adopt W.M.J., a minor child. The petition alleged that Father had full custody of W.M.J. and

had consented to the adoption. It further alleged that Mother's consent was not required because, for at least one year before the petition was filed, Mother had failed without justifiable cause to have contact with W.M.J. or to provide maintenance or support for him. The court scheduled a hearing on the adoption before a magistrate in October 2024 and assigned an investigator. After Mother was served in July 2024, she did not file a written objection to the adoption. However, she appeared at the October hearing and orally objected.

{¶ 4} On October 29, 2024, the magistrate issued a decision finding that Mother was lawfully served with notice but failed to file an objection within 14 days of service as required by the Revised Code. The magistrate concluded that Mother's consent to the adoption was not required. Mother failed to object to the magistrate's decision, and the trial court adopted the decision on December 4, 2024. The court scheduled a non-contested trial on consent and contested trial on the child's best interests. Although the court issued a final appealable order, Mother did not appeal.

{¶ 5} Counsel entered an appearance on Mother's behalf and filed an objection to the adoption contending that the probate court lacked jurisdiction to consider the petition. The court set a hearing for April 1, 2025, to address Mother's jurisdictional claim and whether her consent to the adoption was necessary.

{¶ 6} The hearing took place as scheduled, and the court received testimony from Stepmother and Father. Mother did not appear, although her counsel attended the hearing. On April 4, 2025, the court entered its decision finding it had jurisdiction over the case and that Mother's consent to the adoption was not needed. Mother's timely appeal from the decision followed.

## II. Jurisdiction

### A. Introduction

{¶ 7} Mother's assignment of error states:

> The trial court errored [sic] when it determined it had jurisdiction over the adoption of a child by his stepmother when the child, stepmother, and father do not reside in Montgomery County, Ohio.

{¶ 8} Mother contends the trial court lacked jurisdiction because W.M.J., Stepmother, and Father did not physically reside in Montgomery County, Ohio, as ostensibly required by R.C. 3107.04. Mother further argues that even if we were to conclude that physical presence had not been required based on Stepmother's status as a military spouse, Father and Stepmother failed to provide sufficient evidence that they were domiciled in Montgomery County, "residing" there for the purposes of the statute. In response, Stepmother asserts the trial court applied the correct legal standards in concluding it had jurisdiction. She notes Mother made no effort to refute the evidence presented at the hearing.

{¶ 9} As a preliminary point, Mother's notice of appeal indicates she is appealing from two decisions: (1) the decision finding jurisdiction; and (2) the prior order adopting the magistrate's decision that Mother's consent to adoption was not required. Mother's brief, however, addresses only the jurisdictional issue. As a result, we consider only that matter.

{¶ 10} In its decision on the jurisdictional question, the probate court considered the testimony of Stepmother and Father and found they were credible. The court noted that because Stepmother was married to Father, who was in the military, the jurisdictional analysis differed from that applied to non-military members and spouses. Specifically, their physical location was not the result of their own volition, and the residency analysis was a question of intent. Based on the uncontroverted evidence, the court found that Stepmother

had met her burden of proving residency, and the court had jurisdiction over the adoption petition.

{¶ 11} "A trial court's decision as to whether it has jurisdiction is a legal determination, which is reviewed on appeal de novo; its weighing of the evidence as to a party's intent to establish a domiciliary residence in the state is a factual question, which we review for an abuse of discretion." *Freels v. Powers-Freels*, 2015-Ohio-3915, ¶ 13 (2d Dist.). De novo review is independent, and appellate courts do not defer to trial court decisions. *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.), citing *State ex rel. AFSCME v. Taft*, 2004-Ohio-493, ¶ 27 (3d Dist.).

{¶ 12} Abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). Decisions are unreasonable if they are not supported by a sound reasoning process. *Id*.

{¶ 13} When we consider evidentiary findings, we "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 1997 WL 476684, *4 (2d Dist. Aug. 22, 1997).

B.    Analysis of R.C. 3107.04

{¶ 14} "Original and exclusive jurisdiction over adoption proceedings is vested specifically in the Probate Court pursuant to R.C. Chapter 3107." *State ex rel. Portage Cty. Welfare Dept. v. Summers*, 38 Ohio St.2d 144 (1974), paragraph two of the syllabus. *See*

*also* R.C. 2101.24(A)(1)(ff) (giving probate courts exclusive jurisdiction over adoption, "[e]xcept as otherwise provided by law," as enacted by 2025 Sub.H.B. No. 5, effective March 20, 2025); *In re Adoption of Biddle*, 168 Ohio St. 209 (1958) (involving R.C. 3107.02, the predecessor of R.C. 3107.04).

{¶ 15} R.C. 3107.04 provides in relevant part:

(A) A petition for adoption shall be filed in the court in the county in which the person to be adopted was born, or in which, at the time of filing the petition, the petitioner or the person to be adopted or parent of the person to be adopted resides, or in which the petitioner is stationed in military service, or in which the agency having the permanent custody of the person to be adopted is located.

(B) If the court finds in the interest of justice that the case should be heard in another forum, the court may stay the proceedings or dismiss the petition in whole or in part on any conditions that are just, or certify the case to another court.

{¶ 16} According to Mother, the term "resides" in R.C. 3107.04 is unambiguous and requires applicants to physically reside in the county where the petition is filed. Mother argues that "resides" is not the same as "resident," "residence," or "domicile," which have different meanings. Mother asserts that if the legislature had wanted to expand the definition of "resides" to include intent to make a place one's home, it could have done so. Neither side has cited any cases interpreting R.C. 3107.04 in the specific context of military members or their spouses, nor has our research disclosed any such cases.

{¶ 17} R.C. 3107.04 does not define the term "resides," nor is the term included in the definition section for adoption proceedings. *See* R.C. 3107.01(A)-(S). R.C. 3107.04 was

enacted in 1976, and court decisions following its enactment shed no light on the precise issue in this case. R.C. 3107.04 has been amended only once, in 2024, as part of a bill to modernize probate laws. *See* 2025 Sub.H.B. No. 5. Though the General Assembly substantively amended provisions of the State's adoption laws, the bill made only a minor grammatical change to R.C. 3107.04. *Id. See* Legislative Service Commission Bill Analysis, 135th General Assembly, H.B. No. 5: Final Analysis.

{¶ 18} "If 'the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation,' because 'an unambiguous statute is to be applied, not interpreted.'" *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 8, quoting *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus. However, "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters: (A) The object sought to be attained; (B) The circumstances under which the statute was enacted; (C) The legislative history; (D) The common law or former statutory provisions, including laws upon the same or similar subjects; (E) The consequences of a particular construction; [and] (F) The administrative construction of the statute." R.C. 1.49.

{¶ 19} "Ohio's first adoption statute was passed in 1859." *Adoption of Wedl*, 114 N.E.2d 311, 312 (C.P. 1952), citing 56 Ohio Laws 82. After various amendments and changes, including the Probate Act of 1931, the adoption statutes were enacted under G.C. 10512-9 to 10512-23. *Kirsheman v. Paulin*, 155 Ohio St. 137, 140 (1951); *In re Privette*, 45 Ohio App. 51, 52 (2d Dist. 1932). "In 1953, the adoption statutes were codified in R.C. Chapter 3107. On January 1, 1977, the legislature repealed R.C. 3107.01 through 3107.14 and enacted R.C. 3107.01 to R.C. 3107.19." *In re Adoption of Koszycki*, 133 Ohio App.3d 434, 438 (1st Dist. 1999).

{¶ 20} Our review has encompassed the foregoing statutes and applicable case law. The first mention of "military" in the context of adoption petitions filed in probate court occurred in 1979. *See In the Matter of McDermitt*, 1979 WL 209113, *5 (10th Dist. June 14, 1979). This tracks the effective date of R.C. 3107.04 in 1977. *See* 1976 H.B. No. 156. As enacted, R.C. 3107.04(A) included a reference to a petitioner stationed in military service. *Id.* But the case law involving this statute and its predecessors is sparse and lacks any discussion that is relevant to this matter.

{¶ 21} Generally, there is inconsistency and ambiguity in the legislative use of the term "reside," as well as in the related terms "resident" and "domicile" and how these terms are interpreted by Ohio courts. "The term 'resident' appears in many sections of the Ohio Revised Code." *Prouse, Dash & Crouch, L.L.P. v. DiMarco*, 2007-Ohio-5753, ¶ 6. "Despite these many uses of the term 'resident,' the term itself is not defined generally in the Revised Code. It seems obvious . . . that the General Assembly intentionally did not define the term 'resident' because of the many different uses to which the term is put." *Id*. at ¶ 7. In *Prouse*, the Supreme Court remarked that it had "defined the term 'resident' when the term was used in a statute that did not define the term. For example, 'as used in R.C. 3105.03,' which relates to divorces and annulments, '[t]he word "resident" * * * means one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home.'" *Id*., quoting *Coleman v. Coleman*, 32 Ohio St.2d 155 (1972). In criminal law under the self-defense statute, "residence" is defined as "a dwelling in which a person resides either temporarily or permanently or is visiting as a guest." R.C. 2901.05(D)(3). Again, meaning can vary with context.

{¶ 22} "Domicile has been defined as a place where a person lives, or has his home, a place where an individual has his true, fixed, permanent home and principal residence

established, a place to which the individual intends to return whenever he is absent, and from which he has no present intent to move." *E. Cleveland v. Landingham*, 97 Ohio App.3d 385, 389 (8th Dist. 1994), citing *Sturgeon v. Korte*, 34 Ohio St. 525 (1878). In *Landingham*, the appellant was challenging a judgment for delinquent taxes, and the ordinance in question defined a "resident" as "'an individual domiciled in the City of East Cleveland.'" *Id.* at 389. However, "residence" and "domicile" have also been held to mean different things because individuals may have only one domicile but may have more than one residence. *Bd. of Ed. of City School Dist. of City of Oakwood v. Dille*, 109 Ohio App. 344, 348 (2d Dist. 1959).

{¶ 23} "Reside" also appears in hundreds of places in the Ohio Revised Code, and there are few, if any, statutory definitions. In fact, a broad search resulted in only one definition. *See* R.C. 4710.01(C) (stating for purposes of a chapter dealing with debt-adjusting that "'[r]esides' means to live in a particular place on a temporary or a permanent basis."). Cases offer varying definitions of the term. It has been defined to mean to "'occupy a place as one's legal domicile.'" *Gen. Motors Corp. v. Fockler*, 75 Ohio App.3d 587, 592 (6th Dist. 1991), quoting *Webster's Ninth New Collegiate Dictionary* (1990). "Reside" has also been defined as "the fixed place of habitation to which the person intends to return when absent." *State v. Barnes*, 2008-Ohio-2092, ¶ 22 (6th Dist.) Additionally, "reside" has been defined as "'to live in a place on an ongoing basis.'" *State v. Sims*, 2006-Ohio-6285, ¶ 19, fn. 9 (1st Dist.), quoting *Ohio Jury Instructions*, CR § 519.25(12). The terms "resident" and "resides" have also been used interchangeably in statutes. *E.g.*, R.C. 3956.01(L) ("*Resident*" means any person who *resides* in this state at the time a member insurer is determined to be an impaired or insolvent insurer); R.C. 3721.60(E) ("'*Resident*' means an individual who *resides* in a long-term care facility"). (Emphasis added.) Clearly, the meaning of "resides" can differ depending on context, just like the other terms we have discussed.

{¶ 24} The Supreme Court of Ohio has said that "[t]he case law, statutes, and rules are in accord that the intention of a person is a significant factor in determining where he or she legally *resides*." (Emphasis added.) *Prouse*, 2007-Ohio-5753, at ¶ 10, citing *Barth v. Barth*, 2007-Ohio-973, ¶ 12-16. The matter, therefore, is not without ambiguity, and we attach no particular significance to the fact that the legislature chose to use the word "resides" rather than resident, residence, or domicile. These words have been used interchangeably and inconsistently.

{¶ 25} Considering the ambiguity, it is appropriate to consider the unique circumstances of military personnel relative to civilians in interpreting the statute, as the General Assembly has done in other contexts. For example, R.C. 4757.52 ratified the "Social Work Licensure Compact" to "facilitate interstate practice of Regulated Social Workers." One objective, among others, was to support military families. *See id.*, Section 1(F). Under Section 8 of the Compact, active military members or their spouses may designate a home state where they have a multistate license and may retain this designation while the service member is on active duty. Furthermore, Ohio law provides public school tuition waivers to children placed with people other than parents under military powers of attorney when parents are on duty assignments away from their residences. *See* R.C. 3313.64(F)(14). Accommodating the needs of military personnel and their families is sound public policy, as active-duty service members are required to relocate to wherever their orders may send them.

{¶ 26} Although not strictly applicable here, we also note, as Stepmother indicates, that for purposes of paying bonuses for persons who had active-duty service in war zones, "[a] legal resident of Ohio is an individual for whom Ohio was the state of domicile and who did not claim legal residence in any other state for any purpose. A service member's legal

residence in Ohio is not changed by virtue of military assignment to another state." Adm.Code 5902-4-06(D). This is consistent with the treatment afforded to military service members in other contexts.

{¶ 27} We considered Mother's reliance on *In re Adoption of Murphy*, 53 Ohio App.3d 14 (6th Dist. 1988) in support of her claim that Father and Stepmother did not reside in Montgomery County. In *Murphy*, an unwed mother filed an application to place an unborn child for adoption and her consent to adoption in the Wood County probate court. *Id*. at 14. The application was granted the same day as the filing of the consent to adoption. *Id*. A few weeks later, the mother gave birth to the child in Toledo and then filed a second consent in Wood County. *Id*. The unnamed, prospective adoptive parents then filed a petition for adoption in Wood County a few months later, and placement in their home was approved. *Id*. Several months after the adoption, the Lucas County Juvenile Court adjudged the appellant as the child's father. *Id*. at 15. He intervened in the action and requested that any adoption orders be set aside, or alternatively, for the case to be transferred to Lucas County. *Id*. at 14-15. The Wood County Probate Court found it had jurisdiction and that the father's consent was not required, and the father appealed. *Id*. at 15.

{¶ 28} The private adoption statute under which the probate court had allowed the child's placement required, in relevant part, that "the parent or parents of the child personally have applied to, and appeared before, the probate court of the county in which the parent or parents reside, or in which the person seeking to adopt the child resides, for approval of the proposed placement specified in the application. . . ." *Murphy* at 16, quoting R.C. 5103.16(D)(1). In considering the matter, the Sixth District did not discuss the meaning of "resides." However, the court found that "residence" was not the same as "domicile," and had "'been defined as simply meaning 'a place of dwelling.''" *Id*. at 17, quoting *LeSueur v.*

*Robinson*, 53 Ohio App.3d 9, 12 (6th Dist.). The court further stated that "[i]n determining residence, the intention combined with the acts of the party must be considered; mere intention, without acts to support it, is not controlling." *Id*., citing *Baraket v. Baraket*, 25 Ohio Law Abs. 641, 643 (C.P. 1937).

{¶ 29} The Sixth District found the mother, who had stayed at a residence for two weeks in Wood County, had not demonstrated intent to become a "resident." *Murphy* at 17. The court reasoned that the mother had maintained her apartment in Lucas County, had admitted that her stay was only temporary and that she would return to her apartment, had not changed her mailing address, and had not moved any furniture—even a television—to her temporary residence. *Id.* The court concluded the mother was forum shopping. *Id.* The court found actionable fraud and voided the entire proceedings under R.C. 5103.16. *Murphy* at 17-19.

{¶ 30} The father's appeal also addressed R.C. 3107.04. Emphasizing the statutory text's focus on the time of the adoption petition was filed, the Sixth District reasoned that none of the parties could have properly filed in Wood County because they all lived in Lucas County at that time. *Murphy* at 19. Consequently, the Wood County court lacked jurisdiction. *Id. Murphy* did not address the residency status of a military service member under R.C. 3107.04 or any other provision of Ohio law. It has no bearing on this case.

{¶ 31} The consequences of the statute's interpretation factor in our analysis. R.C. 1.49(E). In domestic relations cases, we have recognized the relevance of a person's active-duty status to determining domicile and a trial court's jurisdiction. We previously reversed a trial court's dismissal of a divorce case for lack of jurisdiction because the record revealed no intention of the military service member plaintiff's intent "to abandon Ohio as his pre-enlistment domiciliary residence." *Holtz v. Holtz*, 2006-Ohio-1812*, ¶* 3 (2d Dist.). In *Holtz*,

the plaintiff had lived in Ohio until he enlisted in the military in 1997 and relocated to a California military base. *Id.* at ¶ 4. The plaintiff married his wife in California in 2001, they had a son, and in 2003, they moved to England upon the plaintiff's military orders. *Id.* Plaintiff's wife later moved back to California. *Id.* at ¶ 5. The plaintiff brought his son to stay with the child's paternal grandmother in Greene County. *Id.* at ¶ 6. The plaintiff then filed for divorce in Greene County while still stationed in England. *Id.* at ¶ 7.

{¶ 32} After the wife was served, she challenged the court's jurisdiction, and the court dismissed for lack of jurisdiction. *Holtz* at ¶ 7. The statute in question, R.C. 3105.03, provided: "'The plaintiff in actions for divorce and annulment shall have been a resident of the state at least six months immediately before filing the complaint.'" *Id.* at ¶ 18. As with the statute at issue in this case, the statute did not mention domicile. We commented:

> Generally, the word "residence," when used in statutes conferring jurisdiction in divorce actions, means domiciliary residence. . . . Every person must have a domicile somewhere, and that domicile is not lost until a new one is acquired. . . . A person abandons his old domicile and acquires a new one only when he chooses a new domicile, establishes an actual residence in the chosen domicile, and demonstrates a clear intent that the new domicile become his primary and permanent residence.

(Citations omitted.) *Id.* at ¶ 18.

{¶ 33} We noted that "[a] military service member's domicile remains as it was prior to enlistment throughout the course of military service, unless a new domicile is voluntarily selected." *Id.* at ¶ 20, citing *Heiney v. Heiney*, 2004-Ohio-3453 (6th Dist.) We stressed that "[t]he domiciliary residence of a person in the military is simply a question of intent," and "[a] military person's actual residence does not operate to change his pre-enlistment domiciliary

residence, because his actual residence is not the result of his own volition." *Id.*, citing *Spires v. Spires*, 7 Ohio Misc. 197, 201 (C.P. 1966). Considering the evidence before the trial court had established Ohio was the plaintiff's domicile, we concluded the trial court erred in dismissing the plaintiff's divorce complaint. *Id*. at ¶ 21.

{¶ 34} We reached the same conclusion in *Freels*, 2015-Ohio-3915, another divorce case involving an active-duty military plaintiff stationed outside Ohio. After reiterating the analysis in *Holtz*, we concluded that based on the plaintiff's "intent and his long-term and ongoing connections to Clark County," the trial court did not abuse its discretion in concluding that it had jurisdiction over the case. *Id*. at ¶ 20. We emphasized that "[t]he determination of the residence of a military service member may involve different considerations than non-military individuals." *Id*. at ¶ 19. We noted that the holdings in *Holtz* "and other cases involving active-duty military service members recognize that the actual physical residence of a military serviceperson does not necessarily align with his or her domiciliary residence for jurisdictional purposes." *Id*.

{¶ 35} Based on the foregoing, we conclude the correct focus here was the intent of Stepmother and Father regarding their domiciliary residence, and the trial court did not err in applying this standard. In this regard, we note that R.C. 3107.04(A) requires residence of only *one* of the listed individuals, which include "the petitioner, or the person to be adopted or parent of the person to be adopted." Thus, the residence requirement could have been met by either Stepmother or Father. In *Heiney*, the court remarked that "[t]he spouse of a person in the military does not ordinarily change residence when living with that serviceperson at a military posting." *Heiney*, 2004-Ohio-3453, at ¶ 14, citing *Dobson v. Dobson*, 1998 WL 519255 (5th Dist. May 18, 1998). We agree. As a result, the same intent standard applied to Stepmother.

## C.     Review of Trial Court's Application of R.C. 3107.04

{¶ 36} According to Mother, even if we decide physical presence in the county had not been required, insufficient evidence supported the court's decision. However, we disagree.

{¶ 37} The evidence presented at the hearing revealed the following facts. Father was born in Haiti and enlisted in the Army Reserve in 2006 when he was in college and lived in Florida. He provided his mother's Florida address on his enlistment form because he was living with her. In 2014, Father voluntarily moved to Ohio to take a job with Wright State University, at which point he updated the military form to list his domicile as Ohio. He lived in Montgomery County from 2014 until he was deployed in 2019, during which time he earned a master's degree in information systems at Wright State. It was Father's intent to stay in Ohio and remain domiciled there.

{¶ 38} W.M.J. was born in Florida. Prior to Father's move to Ohio, he was involved in custody proceedings involving W.M.J. in Pennsylvania. Following Father's move to Ohio, he was involved in a 2017 custody case concerning W.M.J. in the Montgomery County Juvenile Court. In that proceeding, the court granted full custody of the child to Father, gave Mother visitation, and ordered Mother to pay child support. No other court has since exercised jurisdiction over the matter.

{¶ 39} When Father was assigned to active duty in 2019, he had intended his domicile to be Ohio and that he would return to Ohio. Father's intent remained the same through the time of the hearing. On December 6, 2024, Father filed a statement of legal residence with the military listing an address in Riverside, Ohio—his residence prior to deployment. Father had updated the form because he had been unable to find the prior version from 2014.

Father's Montgomery County address is the only domicile that Father has provided the military since enlisting in 2006.

{¶ 40} Stepmother was born in Dayton, Ohio, in 1991, grew up in Ohio, and graduated from high school in Clark County in 2009. From 2017 to 2019, Mother lived with Father at the Riverside residence listed on Father's military form. Stepmother's 2018 tax return indicated she was living with Father in Riverside. Stepmother obtained a marriage license from the Montgomery County Probate Court and married Father in February 2019.

{¶ 41} Father and Stepmother moved to North Carolina in 2019 in connection with Father's assignment to active-duty service. In January 2021, Father was deployed to Germany and then to Kuwait the following year. The deployment was for two years, with Father's home station being North Carolina. Father was then assigned to Kentucky, and the family lived there for a year. In 2023, the family moved to New York, where Father was stationed, and they were still living there at the time of the April 2025 hearing. Stepmother testified that her intent has always been to return to Ohio once Father finished his military service. She stated that her family is much larger than Father's family, and the children spend much more time with her family. At the time of the hearing, Stepmother and Father had three children—W.M.J. and two children who had been born during their marriage. The adoption petition was filed in Montgomery County, Ohio, because the custody proceeding had been filed there, and Montgomery County is the place to which she and Father wanted to return when Father's military service ended.

{¶ 42} Father's tax returns between 2014 and 2018 listed his address in Montgomery County, Ohio. The couple's 2019 and 2020 tax returns stated a North Carolina address but included Ohio tax returns. Stepmother started filing the couple's tax returns in 2021 when Father was deployed in Germany and then in Kuwait. Stepmother used her current

addresses for the couple's 2022 and 2023 taxes because that was what they had always done, and she had not known she could have claimed Ohio as their home state. Later, Stepmother learned from a military website that they could claim Ohio as their home state. Stepmother testified that she intended to claim Ohio as the couple's home state for their 2024 taxes, which had not yet been filed at the time of the hearing.

**{¶ 43}** The trial court found both Father and Stepmother credible, and concluded Stepmother had met her burden of proving residency. The court stressed that Mother failed to present any conflicting evidence. Because the court observed the witnesses, we defer to its credibility decisions. *E.g., Head v. Head*, 2024-Ohio-276, ¶ 46 (2d Dist.), citing *In re J.Y.*, 2008-Ohio-3485, ¶ 33 (2d Dist.). We agree with the probate court that sufficient evidence existed to support its jurisdiction.

**{¶ 44}** The trial court did not err in finding that it had jurisdiction over the petition for adoption. Mother's assignment of error is overruled.

### III. Conclusion

**{¶ 45}** Mother's assignment of error having been overruled, the judgments of the trial court are affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs and HUFFMAN, J., concurs in judgment only.